In the Matter of INVESTORS DEVELOPMENT COMPANY, a Limited Partnership of the State of New Jersey, Debtor.

INVESTORS DEVELOPMENT COMPANY, a Limited Partnership of the State of New Jersey, Plaintiff,

v.

FORUM HOMES, INC. and The Official Creditors Committee, Defendants.

Bankruptcy No. 80–0559.

United States Bankruptcy Court,
D. New Jersey.

Dec. 17, 1980.

Kleinberg, Moroney, Masterson & Schachter by Sheldon Schachter, Millburn, N.J., for debtor in possession.

Teich, Groh, Robinson, Kline & Frost by Arthur Teich, Trenton, N.J., Bathgate, Wegener, Wouters & Neumann by Timothy P. Neumann, Lakewood, N.J., for Creditors Committee.

Chasan, Leyner, Holland & Tarrant by Frank W. Hogan, Jr., Jersey City, N.J., Stroock & Stroock & Lavan, New York City, by Prudence B. Abram (New York Bar) for Centex Homes of New Jersey.

Fox, Schackner, Miastrangelo & Clarken, by A. Roger Blauvelt, Newark, N.J., for U.S. Sav. Bank.

## OPINION

On Motion of Investors Development Company to reject a contract as executory and counter motions of Centex Homes of New Jersey for specific performance; allowing an administrative expense claim; and granting a lien

AMEL STARK, Bankruptcy Judge.

On March 11, 1980, Investors Development Company, a partnership of the State of New Jersey ("IDC") filed a voluntary Petition for Relief under Chapter 11 of the Bankruptcy Code in order to effect an orderly liquidation of its assets. An Order granting relief was entered on the same day.

Thereafter, within the time period permitted by the Bankruptcy Code, IDC filed a Motion seeking this court's approval of the rejection of an allegedly executory contract between IDC and Centex Homes of New Jersey ("Centex"). On response, Centex filed a Motion seeking an Order of this Court, (1) directing IDC to perform upon the contract between IDC and Centex; (2) allowing Centex an administrative claim priority to the extent of its potential expenditures under the contract; and (3) granting Centex a lien or liens on specific parcels of real property or on the proceeds thereof, again, to the extent of its potential expenditures. Within the same motion, Centex also sought to have a sale of real property by the debtor in possession, IDC, disapproved, alleging as the basis for its objection that IDC was receiving an inadequate price. This portion of the motion was, however, subsequently withdrawn and will not be considered in this opinion.

Immediately prior to the denial of Centex's motions, the court granted IDC's motion to reject the subject contract as executory in nature.

### Findings of Fact

1. In evidence are certain agreements between Centex and the Township of Manalapan, New Jersey ("Township") which obligate Centex to make certain improvements to real property then owned by Centex,

situated in the Township of Manalapan, New Jersey and providing for the posting of performance bonds with the Township equal to approximately 120% of the estimated cost of the improvements.

These improvements included street paving, installation of curbs, gutters, sidewalks, street signs and lights, sanitary sewers, water mains, property monuments and the planting of shade trees. The performance bond posted by Centex amounted to $1,260,-680.80; an additional $139,157.20 was posted in cash. Centex's purpose in obligating itself to the Township was to obtain the Township's approval of Centex's applications for subdivision of the subject real property into residential lots.

2. Pursuant to an agreement entitled "Option to Purchase Real Property" (a document not in evidence, but submitted with Centex's notice of counter motion as "Exhibit 1"), IDC, a builder of one family homes, exercised its right to purchase from Centex several parcels of real property which were the subject properties of the agreements between Centex and Middletown Township. The purchases were affected by four separate agreements between IDC and Centex, each entitled "Assignment and Assumption Agreement." These agreements, which are in evidence, obligate IDC to assume Centex's obligations to the Township for the installation of the above enumerated improvements.

3. The debtor in possession, IDC will, pursuant to an Order of this Court, contribute $130,891.20, (funds already in the hands of Manalapan Township) toward completion and correction of the improvements. It is estimated by Centex that approximately $349,000.00 will be required to complete the improvements and to correct existing defects in work already performed. The resultant shortfall of approximately $218,-000.00 is the subject of this litigation. IDC, for its part, concedes that any Centex expenditures will result in its having, in the proceeding, a general unsecured claim.

4. The debtor in possession, IDC, through the testimony of its Board chairman, John C. Giordano, Jr., Esquire, testified as to IDC's financial inability to complete its obligations under the contracts. Centex offered no evidence to the contrary and, indeed, in its oral argument before the court, Centex, through counsel, retreated from its opposition to IDC's motion to reject the contract as executory (see transcript p. 29, lines 6–11), preferring to base its claim in terms of potential forms of relief which might be granted as a result of the apparent breach of the terms of the contract *i. e.*, the inability of IDC to complete or correct the necessary installations.

## CONCLUSIONS OF LAW

### I.

The IDC—Centex contract was executory in nature and, as provided in Section 365 of the Bankruptcy Code (11 U.S.C. § 365) was subject to rejection by the debtor in possession. Indeed, it is the *duty* as well as the right of a trustee or debtor in possession to seek the court's approval for rejection of a contract as executory when such contract is burdensome to the debtor estate. *See Collier on Bankruptcy*, 15th Ed., Vol. 2, § 365.03.

### II.

Relief in the form of specific performance is a wholly inappropriate remedy in a breach of contract action where money damages are readily ascertainable. *Dworman v. Mayer and Board of Aldermen, Governing Body of Town of Morristown*, 370 F.Supp. 1056 (D.N.J.1944). Furthermore, an order for specific performance would directly contravene the very purpose of Section 365 of the Bankruptcy Code (11 U.S.C. § 365). Thus, Centex's abandonment of its opposition to IDC's motion to reject the contract as executory, must, of necessity, operate as abandonment of its motion for specific performance.

### III.

While the issue of contract breach is not squarely before the court, a breach is inferable from the testimony and documentary evidence before the court.

Absent allegations of failure of consideration or unequal bargaining power, equity will not aid a contracting party whose remedy properly lies in law. *SCM Corp. v. Xerox Corp.*, 507 F.2d 358 (2nd Cir. 1974). It is well settled that equity will disgorge an unjust enrichment. *See e. g. Caldwell v. Armstrong*, 342 F.2d 485 (10th Cir. 1965). However, in the instant matter, it is Centex which would be "unjustly enriched" by granting it rights beyond those accruing from a cause of action for breach of contract, namely money damages. Centex attempts to invoke equity for the purpose of gaining a "second bite of the apple."

### IV.

Subsection (b)(1)(A) of Section 503 of the Bankruptcy Code (11 U.S.C. § 503) reads in pertinent part:

(b) After notice and a hearing, there shall be allowed, administrative expenses, other than claims allowed under section 502(f) of this title, including—

(1)(A) the actual, necessary costs and expenses of preserving the estate . . . .

(Subsection (f) of Section 502 of the Bankruptcy Code (11 U.S.C. § 502) applies only in involuntary cases.)

By leaving its performance bond in place, Centex became, in fact, IDC's guarantor. *See Williston on Contracts*, Third ed., section 1211. In order for Centex to be entitled to a priority for administrative costs or expenses, the debtor in possession, IDC, must be required to act, here it is not, since Centex is IDC's guarantor, i. e., a type of insurer. It is not the nature of the services to be performed, but the expense involved, that gives rise to a claim, and here the expense arises because of the guarantee giving rise to no more than a general claim.

### V.

In the brief filed by it, Centex commends to the court several cases which while illustrative of judicial efforts to make injured litigants whole, are clearly distinguishable from the instant matter. In *Pacific Indemnity Co. v. Grand Avenue State Bank of Dallas*, 223 F.2d 513 (5th Cir. 1955) a surety was granted a constructive trust on the proceeds of a check paid to a *bankrupt-primary obligor's trustee* for the surety's completion of a contract. The surety was, however, *also* the assignee of the bankrupt obligor's rights in the contract, a salient factor not present in the instant matter. A constructive trust was also granted in *Texas Co. v. Miller*, 165 F.2d 111 (5th Cir. 1947) *cert. denied* 330 U.S. 880, 68 S.Ct. 911, 92 L.Ed. 1155 (1948). Again, a distinction exists in that the constructive trust in *Texas Co.* attached to funds, paid on behalf of a bankrupt to a taxing authority, which were not actually due and were refunded upon a showing of that fact. In interpreting the state law under which such tax refund was made, the court in *Texas Co.* suggested that the tax *payer*, rather than the entity for whose benefit the tax was paid, was the proper refund claimant. *Id.* at 113–14.

Hypothetically, to analogize *Texas Co.* to the instant matter, this court would find no difficulty in granting Centex a constructive trust or a lien on the cash portion of the performance bond, had it been "refunded" to IDC by the Township. Further, this court questions whether a constructive trust would have been ordered had the taxes in *Texas Co.* not been refundable.

### VI.

A third case advanced by Centex exemplifies the parties relationship and attendant duties. *In re Steelship*, 576 F.2d 128 (8th Cir. 1978) states that a trustee must reject an executory contract or accept it *cum onere*—with all burdens. This is well settled, but it is not by virtue of an IDC—Centex contract that the surety agreement between IDC and Manalapan Township is enforced. IDC is not able to command Centex to perform upon their bond; this can only be undertaken by the Township.

### VII.

Equity follows the law. If performance under the performance bond had been required or "called" prior to the filing of the Petition for Chapter 11 reorganization under the Bankruptcy Code, any resulting damage judgment by Centex against IDC would of necessity be classified as a general unsecured obligation. (It is noteworthy

that the petition for reorganization was filed more than 26 months after the first IDC—Centex contract, more than 21 months after the second contract and more than 11 months after the third and fourth contracts.) Can Centex *improve* its position by virtue of IDC's petition for reorganization under Chapter 11 of the Bankruptcy Code? It is apparent that the answer to this question must be in the negative.

### VIII.

That a debtor in possession must operate his business in accordance with state law is axiomatic. 28 U.S.C. Section 959(b). Centex claims that IDC's failure to complete the improvements to real property is violative of state law since the Township has mandated the improvements. Clearly, as to the Township, IDC *has* provided for completion of the improvements in the form of the Centex guarantee and/or performance bond.

### Conclusion

Centex is entitled to no greater status than that of a general unsecured creditor to the extent of its expenditures under the performance bond.