**AETNA CASUALTY & SURETY COMPANY, Appellant,**

v.

**Concetta I. GAMEL, Appellee.**

No. 84–CV–1026.
Bankruptcy No. 83–01060.

United States District Court,
N.D. New York.

Dec. 28, 1984.

Davoli, McMahon & Kublick, Syracuse, N.Y., for appellant; Andrew F. Plasse, Syracuse, N.Y., of counsel.

Hancock & Estabrook, Syracuse, N.Y., for appellee; Lynn L. Greenky, Syracuse, N.Y., of counsel.

Warren V. Blasland, Liverpool, N.Y., Trustee.

## MEMORANDUM-DECISION AND ORDER

McCURN, District Judge.

Appellant Aetna Casualty and Surety Company (Aetna) appeals from the Bankruptcy Court's June 11, 1984 decision reinstating Concetta I. Gamel's (debtor) health insurance policy retroactive to November 10, 1983. For the reasons discussed below the Bankruptcy Court's decision is reversed.

## BACKGROUND

Prior to September, 1983, debtor purchased health insurance from Aetna. Under debtor's policy the premiums were due quarterly and were prepaid. For example, the premium due on September 1 would provide health insurance coverage from September 1 through November 30. The next premium would be due on December 1 and would cover the subsequent quarter. Debtor failed to pay her September 1, 1983 premium. She filed for bankruptcy under Chapter 13 of the Bankruptcy Code on October 5, 1983. On October 10, 1983 Aetna notified debtor that her policy would lapse if she did not pay her September premium by November 10, 1983. Debtor failed to remit payment by that date, and Aetna considered the policy terminated. Debtor's next premium would have been due on December 1, 1983.

On January 31, 1984 the Bankruptcy Court approved debtor's Chapter 13 plan. The plan lists Aetna as an unsecured creditor for the September 1, 1983 premium only. Debtor's Chapter 13 statement also includes estimated future expenses of $113 per month for health insurance; however, it does not designate a specific insurance carrier. Debtor has not made any additional payments to Aetna except for the restructured September payment provided in debtor's reorganization plan.

In March, 1984, debtor petitioned the Bankruptcy Court to reinstate her health insurance policy with Aetna and to vacate any cancellation of her policy. By order dated June 11, 1984, Bankruptcy Court

Judge Marketos reinstated debtor's policy retroactive to November 10, 1983, and ordered debtor to pay Aetna any post-petition premiums due. In his decision Judge Marketos held that the policy constituted property of debtor's estate and debtor's rights in the policy were protected by the Bankruptcy Code's automatic stay provision. Aetna now appeals Judge Marketos' June 11, 1984, order.

## DISCUSSION

■ This action involves assumption of an executory contract under debtor's Chapter 13 plan. As such, it is a "core proceeding". *See Moody v. Amoco Oil Co.*, 734 F.2d 1200, 1208 (7th Cir.1984). This court's standard of review on appeal is whether the Bankruptcy Court's decision is clearly erroneous. *See* Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, § 158, 53 U.S.L.W. 2, 4–5 (Aug. 21, 1984).

The following issues are presented on appeal:

(1) Whether the automatic stay provisions are applicable to prevent the appellant from cancelling a health insurance policy on account of the debtor's failure to pay the premium.

(2) Whether Aetna Casualty & Surety Co. is required to request the Court to order the Trustee to assume or reject the contract at issue, when a contract has already expired.

(3) Whether the bankruptcy court has jurisdiction to reinstate an insurance policy which has lapsed.

Debtor argues, and the Bankruptcy Court found, that debtor's policy was still in effect during the grace period. Accordingly, debtor contends that she had a property interest in her policy which, pursuant to 11 U.S.C. § 541, became the property of the estate on the date that she filed her Chapter 13 petition. As property of the estate, the policy was protected by the Bankruptcy Code's automatic stay, 11 U.S.C. § 362(a)(6), which restrains a creditor from attempting to recover a claim against the debtor. Debtor maintains that Aetna could not terminate the policy without violating the automatic stay.

Aetna, however, contends that the policy terminated retroactively on September 1, 1983, when debtor failed to pay her premium within the grace period. According to Aetna, the policy terminated prebankruptcy, so the Bankruptcy Court had no jurisdiction to resurrect the policy. Even if debtor's policy did not terminate on September 1, Aetna argues that the trustee in bankruptcy was required to affirmatively assume or reject the policy as an executory contract under 11 U.S.C. § 365. According to Aetna, the trustee failed to assume the policy, so the contract was automatically rejected. In the alternative, Aetna contends that the parties' contract terminated under its own terms on December 1, 1983.

■ Section 541 of the Bankruptcy Code provides that "(t)he commencement of a case (in bankruptcy) creates an estate ... comprised of ... all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Although "(t)he scope of this paragraph is broad ..., it is not intended to expand the debtor's rights against others more than they exist at the commencement of the case." H.R.Rep. No. 595, 95th Cong. 1st Sess. 367 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6323; S.Rep. No. 989, 95th Cong.2d Sess. 82 (1978), U.S. Code Cong. & Admin.News 1978, p. 5868. As the Seventh Circuit explained in *Moody*, 734 F.2d at 1213, "(W)hatever rights a debtor has in property at the commencement of the case continue in bankruptcy— no more, no less."

■ In the present action Judge Marketos correctly found that debtor had a property interest in her policy at the time that she filed her bankruptcy petition. The policy provides for a grace period of 31 days from the premium due day "during which the policy shall continue in force". The letter Aetna sent to debtor also states, "If payment is not received by 11/10/83, your policy *will lapse* (emphasis added)." *See also* N.Y.Ins.Law § 164(3)(A)(3) [now

§ 3216(d)(1)(C) ] (requiring 31 days grace period before health insurance can be terminated "during which grace period the policy shall continue in force").

Under Section 541 debtor's proprietary interest in the policy became the property of the estate when she filed her Chapter 13 petition on October 5, 1983. However, only her rights in the policy as of the date of filing became part of the estate and subject to the automatic stay. As of October 5, 1983 debtor's only rights in the policy were medical coverage until November 10, 1983, the end of the grace period, and the right to pay her September 1 premium by November 10 and thereby extend her coverage until November 30, 1983, the end of the quarter.

Executory contracts under the Bankruptcy Code are governed by 11 U.S.C. § 365. Section 365 provides that "the trustee, subject to the court's approval, may assume or reject any executory contract ... of the debtor ... at any time before the confirmation of a plan...." 11 U.S.C. § 365(a), (d)(2). The right to assume or reject an executory contract is optional although any party to the contract may request that the court order the trustee to assume or reject the contract within a specified period. 11 U.S.C. § 365(d).

■ An executory contract under section 365 is generally one "on which performance remains due to some extent on both sides", H.R.Rep. No. 595, 95th Cong.1st Sess. 347 (1977), or "under which the obligation of both the bankrupt and the other party to a contract are so far unperformed that failure of either to complete performance would constitute a material breach excusing the performance of the other. *In re Alexander,* 670 F.2d 885, 887 (9th Cir. 1982). The parties concede that the insurance policy in the present case was an executory contract. Debtor had to pay premiums to have insurance coverage. Failure to prepay quarterly would terminate the contract except for the grace period

specified in the policy and mandated by law.

■ 11 U.S.C. § 365(b)(1) provides:
If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee—

(A) cures, or provides adequate assurance that the trustee will promptly cure, such default;

(B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and

(C) provides adequate assurance of future performance under such contract or lease.

Because the Bankruptcy Code makes bankruptcy ipso facto clauses invalid, section 365(b)(1) was designed to protect the rights of non-bankrupt parties to executory contracts and leases by insuring that the non-bankrupt parties will get the full value of their bargain. H.R.Rep. No. 595, 95th Cong., 1st Sess. 348 (1977); S.Rep. No. 989, 95th Cong.2d Sess. 59 (1978). Section 365(b)(1) establishes a "conjunctive tripartite test" for assuming an executory contract. The debtor must cure or provide adequate assurance that she will cure any defaults, compensate or provide adequate assurance that she will compensate the other party for any actual pecuniary loss resulting from the defaults, and provide adequate assurance of future performance. All three requirements must be met before the contract can be assumed. *In re Luce Industries, Inc.,* 8 B.R. 100, 104 (Bankr.S. D.N.Y.1980), *rev'd on other grds.,* 14 B.R. 529 (S.D.N.Y.1981).

In the present case debtor's failure to pay her September premium constituted a material breach. Upon filing her Chapter 13 petition she had until confirmation of her plan to assume or reject her insurance contract and cure the default. 11 U.S.C. § 365(d)(2); *Moody,* 734 F.2d at 1215–16

(debtors, who filed for bankruptcy before expiration of 15-day cure period allowed by jobbership contract, could assume contract and cure default at any time before confirmation of bankruptcy plan).

■ Debtor argues that she automatically assumed the insurance policy by not rejecting it. She also contends that Aetna is estopped from denying the policy because it failed to ask the Bankruptcy Court to assume or reject the contract and it also failed to object to debtor's bankruptcy plan. Debtor, however, is incorrect. She had to take affirmative action to prevent the policy from terminating under its own terms. *In re Anne Cara Oil Co.*, 32 B.R. 643 (Bankr.D.Mass.1983). In *Anne Cara Oil Co.*, the debtor filed a Chapter 11 petition on the day before his franchise contract terminated. The Bankruptcy Court for the District of Massachusetts held that the franchise terminated under its own terms notwithstanding the automatic stay because the debtor had failed to take affirmative action to assume the contract. The Bankruptcy Court stated:

> The salient feature is that under 11 U.S.C. § 365 debtors may assume or reject what are executory contracts (with limitations) even over the objection of the non-debtor contracting party. However, one of these limitations is the expiration or termination date. *See In re Nashville White Trucks, Inc.*, 5 B.R. 112 (Bankr.M. D.Tenn.1980). To prevent the relationship from terminating, some affirmative action on the part of the debtor was needed. As of the day after the petition was filed, the franchise agreement ceased to be executory and without some activity by the debtor, could not therefore be assumed. "The [Bankruptcy] Code does not ... grant the debtor ... greater rights and powers under the contract than he had outside of bankruptcy. [There is] nothing in the Code which enlarges the rights of [the debtor] under the contract or which prevents the termination of the contract on its own

> terms...." *In re Nashville White Trucks, Inc., supra* at 117.

*Id.* at 647.

In the present case neither debtor nor the trustee took any action to assume the insurance policy prior to confirmation of debtor's bankruptcy plan. The terms of the plan once adopted could constitute assumption of the policy. *In re Sapolin Paints, Inc.*, 20 B.R. 497, 508 (Bankr.E.D. N.Y.1982). However, the plan in the present case only lists Aetna as an unsecured creditor for the September premium. Debtor's estimated monthly expenses include money for health insurance, but Aetna is not designated as the recipient. Moreover, no provision is made for payment of debtor's December premium. The plan neither cures nor provides adequate assurance of cure for debtor's default. It also provides no assurance of future payments. As such, the plan does not constitute assumption of the policy under 11 U.S.C. § 365.

■ Aetna argues that section 365 requires debtor to assume the contract and that her failure to do so constituted a rejection. As noted above, section 365 is discretionary. The facts indicate that debtor neither assumed nor rejected the policy. Therefore, the policy would terminate under its own terms at the end of the grace period on November 10, 1983. *See Moody*, 734 F.2d 1200; *Lauderdale Motorcar Corp. v. Rolls-Royce Motors, Inc.*, 35 B.R. 544 (Bankr.S.D.Fla.1983); *In re Anne Cara Co.*, 32 B.R. 643. At best, listing Aetna as an unsecured creditor for the September premium in the bankruptcy plan would extend debtor's coverage until November 30, 1983, the end of the quarter.

The court notes that Aetna did not challenge debtor's bankruptcy plan when Aetna had the opportunity. Because Aetna has received at least partial benefit from its bargain, the court finds that Aetna is estopped from denying debtor insurance coverage through November 30, 1983 and that the policy terminated under its own terms on that date. *See generally Garsal Realty, Inc. v. Troy Savings Bank*, 39 B.R. 991

(N.D.N.Y.1984) (appeal pending). Because the policy had already terminated, no contract existed on June 11, 1984, for the Bankruptcy Court to assume. *See In re Anne Cara Co.*, 32 B.R. at 648 (stating "Even though § 365(b) of the Code provides for the assumption of executory contracts, it cannot come into play in a situation where, as here, there is nothing left to assume.").

Accordingly, the court holds that debtor's health insurance policy with Aetna terminated on November 30, 1983. Judge Marketos' June 11, 1984 decision is hereby reversed.

IT IS SO ORDERED.