**In re PLACID OIL COMPANY, Debtor.**

**Bankruptcy No. 385–33419–A–11.**

United States Bankruptcy Court,
N.D. Texas,
Dallas Division.

April 7, 1987.

---

Henry W. Simon, Jr., Sterling Steves, Simon, Anisman, Doby, Wilson & Skillern, Fort Worth, Tex., for Placid Oil Co., debtor.

Richard G. Dafoe, Vial, Hamilton, Koch & Knox, Dallas, Tex., for American Independent Underwriters Corp., plaintiff.

## MEMORANDUM OPINION

HAROLD C. ABRAMSON, Bankruptcy Judge.

This proceeding involves the characterization of what has been described as a self insurance program. The agreement, styled "Hunt Consolidated Master Plan Premium Agreement" (the "Premium Agreement"), satisfies certain state law insurance requirements applicable to Placid Oil Company (the "Debtor") and to Penrod Drilling Company. Underlying the Premium Agreement were various insurance policies covering such risks as automobile liability, workman's compensation, marine liability, general liability, etc. The underlying policies all are expired as of February 20, 1985. Due to the retrospective nature of the Debtor's premium payment obligation, the amount of insurance premium owed by the Debtor has yet to be determined. American Independent Underwriters Corp. ("AIU"), the insurer, has motioned the court for an order compelling the Debtor to assume or reject the Premium Agreement and entitling their claim to administrative priority status. The relief they seek is predicated on the alleged executory nature of the Premium Agreement.

This is a core proceeding under 28 U.S.C. sec. 157, and 11 U.S.C. sec. 101 *et seq.* This memorandum shall constitute findings of fact and conclusions of law under Bankruptcy Rule 7052.

The Premium Agreement is considered by AIU to be separate and apart from the underlying insurance policies. As the discussion will make clear, it does not matter whether the Premium Agreement and the underlying policies are considered severable or entire. If the total quantum of the contract so represented is considered entire, the contract is not executory. On the other hand, even if severance of the two aspects of the contract would make the

Premium Agreement executory, the Debtor is prohibited from assuming it.

As the insurer, AIU is responsible for the payment of claims made by third parties against the Debtor. These liabilities of AIU are based upon the insurance policies described in the Premium Agreement. All of the claims that have been or will be paid by AIU have their origin in the times when the underlying policies were in force, i.e. between September 30, 1977 and February 20, 1985. The Premium Agreement sets forth a detailed method for determining the premium payments due AIU from the Debtor based in large part on the amount of insured claims finally paid by AIU to the third party claimants. The method of payment outlined in the Premium Agreement contemplates estimates of various fees and expenses for which monthly cash payments are to be made and an estimate of payments to be made on claims for which interest bearing demand notes are given.

The Premium Agreement provides that the demand notes which are given as part of the monthly estimated premium installment will be retired to the extent that the claims paid by AIU are reimbursed by the Debtor and Penrod Drilling Company.[1] With the demand notes, a surety bond or letter of credit is provided as security for performance by the insureds. Also, there was a fund initially provided AIU for the payment of claims which was to be replenished from time to time. Adjustments are periodically made in the accounting so that the net payments to AIU are the sum of fees and expenses plus the amount of claims paid. The Premium Agreement also makes reference to surety bonds undertaken by AIU in connection with which Debtor has executed certain indemnity agreements.

Thus, the Premium Agreement replaces an insurance premium paid in advance with a retrospective premium assessment determined largely by the amount of insured claims finally paid. The premium assessments continue until all claims have been disposed of, far beyond the period of cover-age under the insurance policies. As is made clear in the agreement, the final premium adjustment might not occur for several years after the termination of the underlying policies.

Conspicuously absent from the Premium Agreement is any reference to obligations of the Debtor other than the payment terms outlined above. Testimony was offered at the hearing on AIU's motion to the effect that the Debtor participated in the claims adjustment process and, at times, may have assumed responsibility for the handling of certain claims. The evidence does not support the conclusion that the Debtor was in any way bound to participate or to take responsibility for the handling of any claims, however. The Premium Agreement includes in the definition of the term "Incurred Losses" all of the expenses associated with the claims adjustment process, e.g. investigation expense, litigation expense, court and process costs, etc. This and other testimony offered indicates that AIU was ultimately responsible for the entire claims adjustment process, including the payment of the claims. No doubt participation by the Debtor in the claims adjustment process was accommodated by AIU, but this is not sufficient to show a contractual obligation. The evidence before the court shows that the Debtor's obligation under the Premium Agreement was limited to payment as described above.

■ In analyzing contracts under Bankruptcy Code Section 365, courts have generally employed the Countryman definition of an executory contract, i.e. a contract under which the obligations of both the bankrupt and the other party remain so far unperformed that failure of either to complete performance would constitute a material breach excusing performance of the other. Countryman, *Executory Contracts in Bankruptcy: Part I,* 57 Minn.L.Rev. 439, 460 (1973). The test has been applied in various situations where either a duty to perform or to forebear on the part of either party would, if breached, constitute a mate-

---

1. The Premium Agreement provides that Debtor and Penrod Drilling Company are separately liable in the amount of 20% Debtor, 80% Penrod, for the premium assessments.

rial default. *See Lubrizol Enterprises v. Richmond Finishers, Inc.*, 756 F.2d 1043 (4th Cir.1985); *Matter of B. Siegel Co.*, 51 B.R. 159 (Bankr.E.D.Mich.1985); *In re O.P.M. Leasing Services, Inc.*, 23 B.R. 104 (Bankr.S.D.N.Y.1982), and cases cited therein. Even a contingent obligation of each of the parties, prior to the expiration of the contingency, is sufficient to render a contract executory when a breach of the obligation would be material. *Lubrizol*, 756 F.2d at 1046. The common element of all executory contracts appears to have been defined as reciprocal obligations between the parties. *National Labor Relations Board v. Bildisco & Bildisco*, 465 U.S. 513, 522 n. 6, 104 S.Ct. 1188, 1194 n. 6, 79 L.Ed.2d 482 (1984). In contrast, an executed contract is one in which the arrangement is already performed. *In re American Magnesium Co.*, 488 F.2d 147 (5th Cir.1974).

■ Absent in this case is the reciprocal nature of the obligations. The Debtor's only duty under the Premium Agreement is to pay money, which cannot alone suffice as a matter of law. *Lubrizol Enterprises, supra* at 1046. It is undisputed that all claims for which AIU is the insurer arise from events occurring prior to the bankruptcy filing.[2] Thus, the evidence conclusively establishes that AIU is the holder of a "claim" that arose pre-petition.[3] *Matter of Baldwin United Corp.*, 48 B.R. 901 (Bankr.S.D.Ohio 1985); *Cf., Matter of Esgro, Inc.*, 645 F.2d 794 (9th Cir.1981); *In re Johns-Manville Corp.*, 57 B.R. 680 (Bankr. S.D.N.Y.1986). Because the full extent of the Debtor's liability is yet to be determined, the claim must be considered contingent. *In re All Media Properties, Inc.*, 5 B.R. 126 (Bankr.S.D.Tex.1980) *aff'd. mem.* 646 F.2d 193 (5th Cir.1981). However, the contingent nature of the claim is not sufficient to establish an executory contract. *In re THC Financial Corp.*, 686 F.2d 799 (9th Cir.1982). Other than the payment terms of the Premium Agreement, there is no duty of future performance owing from the Debtor. The insurance coverage which was the object of the contract has been completely obtained by the Debtor. Thus, this case parallels the situation in *In re Gladding Corp.*, 22 B.R. 632 (Bankr.D. Mass.1982), where the court held that a retrospective premium arrangement did not constitute an executory contract.[4]

The *Gladding* court considered a retrospective premium arrangement where the premium was not ascertainable until the insurer had paid all insured claims for a given policy year or until the parties had agreed to close the books on a policy year. As in this case, the debtor was to make interim payments based upon estimates of what the final premium would be. In commenting on the respective rights of the parties, the *Gladding* court said:

> [A] debtor-insured retains his present interest in the policies whether they be assumed or not. . . . There is no forfeiture of past benefits. Likewise, the insurance company gains nothing by assumption of the contract, except the right to its pre-petition debt paid ahead of general claims.

*Id.* at 636.

■ AIU argues that the Premium Agreement is essentially an indemnification contract and urges that this characterization changes the analysis. Indemnification obligations have formed part of contracts that courts have held to be executory. *See Lubrizol Enterprises, supra; In re O.P.M. Leasing Services, Inc., supra; In re Preston*, 53 B.R. 589 (Bankr.M.D.

---

**2.** August 19, 1986.

**3.** Bankruptcy Code section 101(4) defines a "claim" as any "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed or contingent, matured or unmatured, disputed, undisputed, legal, equitable, secured, or unsecured. . . ."

**4.** The executory nature of an insurance policy is not an issue in this case since we are dealing with a payment arrangement that survives the actual insurance policies. Such cases as *Matter of B. Siegel Co.*, 51 B.R. 159 (Bankr.E.D.Mich. 1985); *Aetna Casualty & Surety Co.*, 45 B.R. 345 (N.D.N.Y.1984), and *In re New England Carpet Co.*, 18 B.R. 514 (Bankr.D.Vt.1982), have no application to the characterization of the Premium Agreement because they deal with unexpired insurance policies.

Tenn.1985). But there is a point at which the indemnification aspect of a contract may run afoul of the exception to the general rule of assumability of executory contracts found in Section 365(c)(2) of the Bankruptcy Code.[5] In this regard, the issue becomes whether the indemnification agreement is a "financial accommodation". The term "financial accommodation" has been defined as the extension of money or credit to accommodate another. *In re Adana Mortgage Bankers, Inc.*, 12 B.R. 977, 986 (Bankr.N.D.Ga.1980); *accord, In re Wegner Farms Co.*, 49 B.R. 440 (Bankr. N.D.Iowa 1985).

Under the facts of this case, the court can arrive at no other conclusion than that the Premium Agreement is just such a "financial accommodation". The entire structure of the retrospective premium arrangement evidences an extension of credit by AIU for the benefit of the Debtor. The provision for demand notes and security in the form of a letter of credit or a surety bond is only the most striking aspect. The transaction, in its totality, represents insurance services provided in advance of payment. There are no collateral obligations here to obscure the essentially debtor/creditor nature of the arrangement.

The prohibition against assumption of contracts for "financial accommodation" exists for the protection of a party who has made a yet unperformed lending commitment, *In re Postle Enterprises, Inc.*, 48 B.R. 721 (Bankr.D.Ariz.1985), but the prohibition is for the benefit of all claimants against the estate as well. *See In re Avorn Dress Co., Inc.*, 79 F.2d 337 (2d Cir.1935) (unauthorized post-petition loan to trustee not entitled to administrative expense priority as this was prejudicial to other creditors). The indemnity benefit, if we accept the characterization, flows to AIU in the form of a claim. The court does not address state law or regulatory requirements that may govern the relationship of the parties other than to note that

there is no showing that the Debtor will lose the insurance protection afforded by the policies if this court treats the Premium Agreement solely as evidence of indebtedness and the basis of a claim. The court sees no reason to believe that assumption of the Premium Agreement is necessary to preserve the estate.

Under Section 365(g)(1) of the Bankruptcy Code, when an executory contract is not assumed by the time of confirmation of a plan or conversion of a case, the non-debtor party is treated as if it had a pre-petition claim. H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 349 (1977); Sen.Rep. No. 95–989, 95th Cong., 2d Sess. 60 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787. Whether the Premium Agreement is described as partly performed and non-executory or an indemnification agreement providing a financial accommodation, the result is the same. On the record before it, the court must conclude that administrative priority treatment of AIU's claim is not warranted. 11 U.S.C. sec. 503(b)(1); *Matter of EDC Holding Co.*, 676 F.2d 945 (7th Cir.1982); *In re Mammoth Mart, Inc.*, 536 F.2d 950 (1st Cir.1976); *Matter of Baldwin-United Corp.*, 13 B.C.D. 1083 (Bankr. S.D.Ohio 1985); *Matter of Investors Development Co.*, 6 B.C.D. 1415 (Bankr.D.N.J. 1980). AIU is the holder of a claim that arose pre-petition and entitled to no special priority absent a showing of necessity for the preservation of the estate.

For the reasons given, the court finds that the Premium Agreement is not an executory contract because no performance by the Debtor, other than the payment of money, is required. Alternately, the court finds that the Premium Agreement is a "financial accommodation" for the benefit of the Debtor which cannot be assumed under Section 365. The claim of AIU based upon the Premium Agreement cannot be allowed priority status because there is no showing of necessity for preser-

---

**5.** Section 365(c)(2) provides:
(c) the Trustee may not assume or assign any executory contract ... of the debtor ..., if—
* * * * * *

(2) such contract is a contract to make a loan, or extend other debt financing or financial accommodations, to or for the benefit of a debtor, ...

vation of the estate. The motion of AIU to compel assumption or rejection of the Premium Agreement and for administrative priority status of the claim is denied. Counsel for Debtor is directed to prepare an appropriate form of order and submit it to the court after circulation.