**In re WISCONSIN BARGE LINE, INC., et al, Debtors.**

**Bankruptcy No. 86–00016(SE).**

United States Bankruptcy Court,
E.D. Missouri,
Southeastern Division.

Aug. 4, 1987.

See also, Bkrtcy., 76 B.R. 142.

Gregory D. Willard, St. Louis, Mo., for debtors.

Milton L. Fisher, James M. Lawniczak, Chicago, Ill., for INA.

Randall A. Martin, St. Louis, Mo., for The Stolar Partnership.

Stuart J. Radloff, Clayton, Mo., for Creditors' Committee.

## MEMORANDUM OPINION

DAVID P. McDONALD, Bankruptcy Judge.

### INTRODUCTION

On August 1, 1986, Insurance Company of North America ("INA") filed its Motion To Compel Debtors To Assume Or Reject Executory Insurance Contracts and Brief in support thereof. On August 26, 1986, Debtors and the Official Creditors' Committee filed their Brief In Opposition To INA's Motion. On August 29, 1986, INA filed its Reply Brief. The parties having submitted the matter to the Court on the moving papers and briefs, the Court, upon

having reviewed the same and based upon the record as a whole, now makes the findings of fact and conclusions of law set forth below and this date denies INA's Motion.

## FINDINGS OF FACT

1. Wisconsin Barge Line, Inc. ("Wisconsin"), CLC of America, Inc. ("CLC"), CLC Barge Line, Inc. ("CLC Barge"), Reidy Terminal, Inc. ("Reidy") and New Orleans Shipyard, Inc. ("Shipyard") (the "Debtors") are corporations engaged in the inland river transportation business. Wisconsin, CLC Barge, Reidy, and Shipyard are wholly owned subsidiaries of CLC. The operations of these corporations are extensive and cover much of the midwest and Gulf ports. Wisconsin is a carrier of bulk nonregulated commodities on the Mississippi, Illinois, Ohio, and Tennessee river systems, operating a fleet of over 500 barges. Its primary terminus of operations is located at Belmont, Missouri. CLC Barge owns 24 barges, which are chartered to Wisconsin. It leases approximately 6,200 feet of river property north of New Orleans which is subleased to Shipyard. Shipyard is located on the lower Mississippi River and repairs inland marine equipment. Reidy is located on six acres of land it owns on the Mississippi River near St. Louis, Missouri. It operates a liquid bulk storage, midstream fuel service and barge repair terminal.

2. INA and Debtors entered into insurance contracts for each of the years 1983, 1984, and 1985.

3. In each of these contracts, INA agreed to provide insurance and to reimburse Debtors for losses due to, among other things, incidents related to ships and cargo, marine liabilities, damage to other vessels, and damage to docks and piers, subject, however, to certain deductibles and limits. In addition, INA agreed to reimburse Debtors for costs incurred in the defense of suits, including attorney's fees, on any claim covered under the respective contracts once the applicable deductible had been reached.

4. In consideration for insurance coverage, Debtors agreed to pay INA premiums. The agreed upon premiums include a minimum premium payable during the policy year together with retrospective premiums due in years following the policy year. These retrospective premiums are calculated based upon a maximum total premium which is set forth in the policy and upon the loss experience of the Debtors.

5. On January 13, 1986, Wisconsin, CLC, CLC Barge, Reidy, and Shipyard filed their voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.

6. On January 13, 1986, the Court ordered these cases jointly administered.

7. As of August 1, 1986, the date of INA's motion, Debtor owed INA retrospective premiums of $219,612.49 on the 1983 policy, retrospective premiums of $469,659.38 on the 1984 policy and retrospective premiums of $183,712.40 on the 1985 policy. As loss experience accumulates, Debtors will owe additional sums in retrospective premiums to INA for the years 1983, 1984, and 1985.

8. Other than the payment of retrospective premiums for the years 1983, 1984, and 1985, Debtors have no other duties owing to INA under the respective policies for the years 1983, 1984, and 1985.

9. Any of the foregoing findings of fact deemed to be conclusions of law are hereby incorporated into the Conclusions of Law.

## CONCLUSIONS OF LAW

■ 1. This Court has jurisdiction over the parties and subject matter of this proceeding pursuant to 28 U.S.C. §§ 1334, 151, and 157 and Local Rule 29 of the United States District Court for the Eastern District of Missouri. This is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(A) and (O), which the Court may hear and determine.

2. INA argues that its insurance contracts with Debtors are executory in nature and, therefore, should be either assumed or rejected by them. Debtors resist INA's motion by arguing that these contracts are not "executory" in nature, and, therefore, need not be either assumed or rejected by them. The Court agrees with Debtors.

3. In Professor Countryman's article, *Executory Contracts In Bankruptcy: Part I,* 57 Minn.L.Rev. 439, 460 (1973), he defines an executory contract as "a contract under which the obligation of both the bankrupt and the other party are so far unperformed that the failure of either to complete performance would constitute a material breach excusing performance of the other." Professor Countryman's definition was adopted by the Eighth Circuit in *In re Knutson,* 563 F.2d 916, 917 (8th Cir.1977) and still continues to be applied by the Eighth Circuit, *see, In re Speck,* 798 F.2d 279 (8th Cir.1986). This Court, therefore, must and will apply the Countryman definition to the facts before it.

4. In a case strikingly similar to the one at bar, Judge Abramson recently applied the Countryman definition and held that an agreement providing for the payment of retrospective premiums was not an executory contract because the debtor therein had no duty of future performance under the contract, other than the payment of money. *In re Placid Oil Co.,* 72 B.R. 135, 137–38 (Bankr.N.D.Tex.1987) (citing cases). Finding, therefore, that the agreement in question was not executory, Judge Abramson denied the insurer's motion to compel the debtor to either assume or reject the agreement. *Id.* at 139–40.

5. This Court agrees with the analysis stated in *Placid Oil* and finds that the insurance contracts between INA and Debtors are not executory in nature because Debtors have no duty under them to INA, other than the payment of money. The Court holds, therefore, that they need not be either assumed or rejected by Debtors.

6. INA's Motion will be DENIED.

7. Any of the foregoing conclusions of law deemed to be findings of fact are hereby incorporated into the Findings of Fact.