839 F.2d 533
 Bankr. L. Rep. P 72,172, 5 UCC Rep.Serv.2d 996
In re Albert J. WEGNER; Margie Wegner, Debtors.
William C. GRIFFEL, Appellant,
v.
Gregory G. MURPHY, Bankruptcy Trustee, Appellee.
 No. 87-3615.
 United States Court of Appeals,
Ninth Circuit.
 Submitted Nov. 6, 1987.*
Decided Jan. 28, 1988.
 
 Robert C. Smith, Billings, Mont., for appellant.
 Doug James, Billings, Mont., for appellee.
 Appeal from the United States Bankruptcy Appellate Panel of the Ninth Circuit.
 Before ANDERSON, NORRIS and HALL, Circuit Judges.
 J. BLAINE ANDERSON, Circuit Judge:
 
 
 1
 William C. Griffel (appellant) appeals from the Bankruptcy Appellate Panel of the Ninth Circuit (BAP) decision affirming the judgment of the United States Bankruptcy Court for the District of Montana, 61 B.R. 414 (1986). The bankruptcy court found that cattle, equipment and money had been preferentially transferred to appellant within 90 days prior to Wegner's (debtor) filing for bankruptcy in violation of 11 U.S.C. Sec. 547, and therefore ordered appellant to turn over the property. We reverse.
 
 BACKGROUND
 
 2
 Appellant owned and operated a ranch in Montana. In December 1981, appellant entered into a lease agreement with debtor. Debtor leased all of appellant's land, except the land on which appellant's house stood, for five years, in exchange for cash and a share of the crops.
 
 
 3
 On February 1, 1982, appellant and debtor entered into a "Contract for Sale and Purchase of Personal Property" whereby appellant sold debtor 178 cows, 90 yearling heifers, and machinery, for a total price of $169,188. Since debtor had already leased the land upon which the cattle and machinery stood, it was unnecessary to physically move the property to another location. Payments were to be made in annual installments as follows:
 
 
 4
 July 1, 1983 $ 4,000 principal plus interest
 
 
 5
 (14% on unpaid balance)
 
 
 6
 July 1, 1984 $40,000 principal plus interest
 
 
 7
 July 1, 1985 $40,000 principal plus interest
 
 
 8
 July 1, 1986 $40,000 principal plus interest
 
 
 9
 July 1, 1987 $45,188 principal plus interest
 
 In the contract, the parties provided:
 
 10
 It is agreed between the parties that title to the property sold hereby shall remain in the seller until the balance of the purchase price or all the personal property is paid in full or until the buyer and seller make other arrangements which may be mutually agreeable. And it is further agreed that during the term of this contract, the seller's [appellant's] brand will remain on all of the livestock, as well as any increase in said livestock occurring during the term of this agreement.
 
 
 11
 In addition, the parties agreed that in the event of debtor's default on any one of the five annual payments due under the agreement, that appellant may give debtor 90 days' notice in writing specifying the nature and character of the default. If debtor does not cure the default within 90 days, appellant could retake the property and retain any payments as reasonable rental and liquidated damages.
 
 
 12
 By July 1, 1984, debtor was in default for failure to pay principal and interest. On December 10, 1984, debtor sent appellant a letter, along with three checks totaling $17,839.01. The letter informed appellant that debtor was in the process of filing for bankruptcy and would be unable to meet any other obligations on the purchase and sale contract or the lease agreement. The checks were the proceeds from the sale of some cull cows.
 
 
 13
 On December 12, 1984, debtor called appellant and told him that he was broke, could not pay on the contract, and was contemplating filing bankruptcy, and asked appellant to take over the feeding of the cattle. Appellant stated that he would be out of town, but would take over the feeding of the cattle in early January and asked if debtor could continue to do it until then. Debtor also had the electric accounts on the electric meters switched over to appellant's name on this date.
 
 
 14
 Debtor filed for Chapter 7 bankruptcy on January 3, 1985. Subsequent to the filing, appellant's attorney wrote to the debtor stating that the letter of December 10, 1984, acknowledged default, thus making notice of default under the agreement unnecessary and allowing repossession of the cattle and machinery. At trial, however, appellant testified that notwithstanding his attorney's letter, he already had possession of the property since the phone call on December 12, 1984.
 
 
 15
 The trustee filed an adversary complaint to void two preferences. The first was the transfer of the debtor's interest in the cattle and machinery to appellant in December 1984. The second is the payment of $17,839.01 the debtor made on December 10, 1984. The bankruptcy court found that because the contract for the sale of the cattle and machinery was not an executory contract, both transfers in question were preferential under section 547 of the Code. Therefore, the court ordered appellant to surrender cash (representing the checks and the sale proceeds of some cattle), the remaining cattle, and the farm equipment.
 
 
 16
 The issue we must decide is whether the BAP erred when it concluded that the contract for sale and purchase of personal property between debtor and appellant was not an executory contract and that the transfers in question were preferential under 11 U.S.C. Sec. 547.
 
 
 17
 Because this court is in as good a position as the BAP to review the bankruptcy court's findings, the bankruptcy court's decision is reviewed independently. Acequia, Inc. v. Clinton (In re Acequia, Inc.), 787 F.2d 1352, 1357 (9th Cir.1986); Ragsdale v. Haller, 780 F.2d 794, 795 (9th Cir.1986). This court reviews the bankruptcy court's findings of fact under a clearly erroneous standard and its conclusions of law de novo. Pizza of Hawaii, Inc. v. Shakey's, Inc. (In re Pizza of Hawaii, Inc.), 761 F.2d 1374, 1377 (9th Cir.1985).
 
 DISCUSSION
 
 18
 The first issue to be decided is whether the contract for the sale of cattle and machinery was an executory contract. Whether a contract is executory within the meaning of the Bankruptcy Code is a question of federal law. Benevides v. Alexander (In re Alexander), 670 F.2d 885, 888 (9th Cir.1982). Although the Code does not define "executory contract," courts have generally defined such a contract as one on which performance is due to some extent on both sides. NLRB v. Bildisco & Bildisco, 465 U.S. 513, 522 n. 6, 104 S.Ct. 1188, 1194 n. 6, 79 L.Ed.2d 482 (1984). Also, in executory contracts the obligations of both parties are so far unperformed that the failure of either party to complete performance would constitute a material breach and thus excuse the performance of the other. Pacific Express, Inc. v. Teknekron Infoswitch Corp. (In re Pacific Exp., Inc.), 780 F.2d 1482, 1487 (9th Cir.1986). The question of the legal consequence of one party's failure to perform its remaining obligations under a contract and whether one of the parties' failure to perform its remaining obligations would give rise to a material breach is an issue of state contract law. Hall v. Perry (In re Cochise College Park, Inc.) 703 F.2d 1339, 1348 n. 4 (9th Cir.1983).
 
 
 19
 It is undisputed that debtor had remaining obligations to pay monies due under the contract. We must, therefore, examine the obligations of appellant. Under the terms of the contract, appellant had two duties to perform. First, he was required to turn over legal title to the cattle and machinery after debtor has paid in full. Second, appellant was obligated to provide a bill of sale on demand whenever the debtor decided to sell some of the cattle. The question is whether these obligations were enough to make the agreement an executory contract.
 
 
 20
 Since we find that the obligation of providing a bill of sale is a material obligation, we shall discuss this issue first.
 
 
 21
 Appellant argues that Montana's branding statutes make the duty to provide a bill of sale on demand a material obligation. Under Montana law, it is required that the transfer of ownership of cattle cannot be accomplished by the mere taking of possession, unless the livestock have been inspected for brands. MCA Sec. 81-3-211(2). Section 81-3-211 requires a bill of sale signed by the seller for presentation to a livestock inspector whenever a change of ownership inspection is required. Furthermore, it is unlawful to transfer livestock in any manner contrary to these provisions. The branding statutes also provide that a brand is prima facie evidence of ownership. MCA Sec. 81-3-105.
 
 
 22
 Based upon these provisions, appellant submits that if he were to fail to provide a bill of sale to the debtor upon request, a material breach would occur. The BAP and bankruptcy court found the duty of providing bills of sale on demand was not a material obligation. Instead, they found that this was a "menial task" as compared to the contract's overall purpose of transferring ownership of the cattle and machinery to the debtor.
 
 
 23
 The BAP also applied sections of the Uniform Commercial Code (UCC) to the facts of this case. It looked to section 2-401 which provides that any retention or reservation by the seller of title in goods delivered to the buyer is limited in effect to a reservation of a security interest. MCA Sec. 30-2-401. The BAP also looked to Article 9 which governs the treatment of security interests which arise from the sale of goods. MCA Sec. 30-9-113. Under UCC Sec. 9-202, title to collateral is immaterial. MCA Sec. 30-9-202. Thus, these UCC provisions, coupled with the debtor's complete control over all the property, overcame the presumption of ownership in appellant created by the brand. Based upon this, the BAP found that appellant's duty of providing legal title was not a material obligation.
 
 
 24
 In this appeal, we consider the general Montana provision that when a local non-UCC statute governs a specific point, it prevails over a general provision of the UCC. See Martel Constr., Inc. v. Gleason Equipment, Inc., 166 Mont. 479, 534 P.2d 883, 16 UCCRS 1228 (1975). Section 1-2-102, MCA, provides that:
 
 
 25
 In the construction of a statute, the intention of the legislature is to be pursued if possible. When a general and particular provision are inconsistent, the latter is paramount to the former, so a particular intent will control a general one that is inconsistent with it.
 
 
 26
 We also find guidance from the Montana Supreme Court in DeFord v. Wansink, 152 Mont. 487, 452 P.2d 73 (1969). In this case, the parties entered into a contract which provided that in return for defendant providing plaintiff with cattle, plaintiff would care for them. As compensation, plaintiff would receive 100% of the calf crop after the first year and 65% for each of the next two years. The cattle were to be branded with defendant's brand. The contract specifically provided that after the division of the calf crop each year, the defendant would deliver to plaintiff a bill of sale for his share, provided plaintiff was not indebted to defendant. Id. 452 P.2d at 74. After the first year, plaintiff arranged to sell his share of the calf crop and asked defendant to sign the bill of sale for them. Defendant refused to do so. The Montana Supreme Court found that the refusal to provide a bill of sale constituted a breach of contract. Id. at 75. We find that this holding provides a sound basis for appellant's argument that failure to provide a bill of sale would be a material breach. We find that the specific statutory requirement for a bill of sale to transfer title to livestock supersedes the general provisions of the UCC. Because of this and that the reality of the cattle business is that cattle may not be sold without a bill of sale from the owners of that brand, we find that the duty of providing a bill of sale on demand is a material obligation.
 
 
 27
 Since we find that the duty to provide a bill of sale on demand is a material obligation, we do not need to address the issue of whether appellant's duty of providing legal title after payment in full would make the contract executory. We hold that the contract is in fact executory.
 
 
 28
 The last issue to be determined is whether the sales agreement was terminated prior to January 3, 1985, the date on which debtor filed for bankruptcy. If so, the property would have automatically reverted back to appellant, leaving debtor, and thus also the trustee in bankruptcy, with no interest in the property. Since the bankruptcy court held that the 1982 sales agreement was not an executory contract, it did not determine whether the sales agreement was terminated prior to the date debtor filed for bankruptcy. The court, however, made certain findings of fact upon which we may, as a matter of law, rule that termination did or did not occur.
 
 
 29
 The bankruptcy court held that debtor delivered possession of the collateral to appellant on December 12, 1984. This fact was not changed by appellant's request that debtor care for the cattle for a short period of time.
 
 
 30
 The bankruptcy court found this return of possession of the collateral to be a voidable preference. This follows its conclusion that the contract was non-executory. To implement our conclusion that the contract was executory, we hold as a matter of law that the return of possession effectuated a termination of the contract. The facts effectuating termination and abandonment of the contract were accomplished on December 12, 1984. By that time, the debtor had written appellant expressing his inability to continue to fulfill his purchase obligations, returned the cattle and equipment to appellant's possession, and signed over three checks representing proceeds of sale of certain cull cows. He had also cancelled the lease and transferred the responsibility for premise utilities to appellant.
 
 
 31
 After these transactions, the attorneys representing appellant and debtor exchanged correspondence. In a letter dated January 11, 1985, appellant's attorney wrote the debtor stating that debtor's December 10, 1984 letter acknowledged that notice of default was waived or unnecessary, and that debtor consented to repossession of the cattle and machinery by appellant, which appellant intended to effectuate on January 14, 1985. See Trustee's Second Amended Complaint for Turnover, Exhibit C. In regard to this letter, appellant testified that he did not suggest the repossession language contained in the letter, but he told his attorney he would be able to start feeding the calves January 14, that he was unaware of the letter's contents until his deposition was taken, and that he already had possession of the cattle and machinery since December 12, 1984.
 
 
 32
 In response to this letter, debtor's attorney stated that any repossession would violate the automatic stay provided by section 362 of the Bankruptcy Code. See, id. Exhibit D. The letter also stated that "we are not in a position to abandon or give up any interest which the (debtors) may have in said contracts." Id. Based upon this statement, the trustee contends that the debtors had not terminated the agreement.
 
 
 33
 We find that the BAP's and bankruptcy court's finding that possession was effectuated on December 12, 1984 was not clearly erroneous.
 
 
 34
 The question of the legal consequences of one party's failure to perform its remaining obligations under a contract is an issue of state contract law. In re Cochise Park, 703 F.2d at 1348 n. 4.
 
 
 35
 In Montana, the rule is that a written contract may be cancelled or terminated by the parties and such cancellation may be made orally. In National Indemnity Co. v. St. Paul Fire & Marine Ins. Co., 176 Mont. 137, 576 P.2d 733, 735 (1978), the Montana Supreme Court stated:
 
 
 36
 In this State, a written contract may be cancelled by the mutual consent of the parties, and such cancellation may be made orally. (Citations omitted).
 
 
 37
 * * *
 
 
 38
 * * *
 
 
 39
 "Whether cancellation by mutual agreement has been effected depends on the intention of the parties as evidenced by their acts, conduct and words, taken in connection with the attendant circumstances...." (Citations omitted).
 
 
 40
 And further, the Montana Supreme Court stated in West River Equipment Co. v. Holzworth Constr. Co., 134 Mont. 582, 335 P.2d 298, 301-02 (1959):
 
 
 41
 "The parties to the executory written agreement were privileged to terminate it at any time by mutual consent independently of any express agreement so providing and it is immaterial whether such termination be characterized an abandonment, cancellation, mutual rescission or waiver...." (Citations omitted).
 
 
 42
 * * *
 
 
 43
 * * *
 
 
 44
 However, mutual cancellation must be clearly expressed and shown, and acts and conduct of the parties to be sufficient must be clear, convincing and inconsistent with the existence of the contract. (Citations omitted).
 
 
 45
 Based upon the findings of fact made by the bankruptcy court, we find that debtor intended to abandon or cancel the contract as of December 10, 1984, and that appellant accepted the rescission and resumed possession of the cattle and equipment on December 12, 1984. Thus, the contract was effectively terminated by the mutual consent of the parties as of that date.
 
 
 46
 Since we have found that the contract was duly terminated before debtor filed for bankruptcy, the trustee has no interest in the collateral covered by the contract.
 
 
 47
 The decisions of the bankruptcy court and the Appellate Panel of the Ninth Circuit are REVERSED, and the case is REMANDED for disposition in accordance with this ruling.
 
 
 
 *
 The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34-4 and Fed.R.App.P. 34(a)