In re TEXSCAN CORPORATION,
Debtor.

COMMERCIAL UNION INSURANCE
COMPANY, Appellant,

v.

TEXSCAN CORPORATION, Appellee.

No. 90–15929.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 9, 1991.

Decided Oct. 5, 1992.

Gerald L. Shelly, Johnson Maynard Grant & Parker, Phoenix, Ariz., for appellant.

Robert E. Miles, Streich Lang, Phoenix, Ariz.; for appellee.

Before: TANG and TROTT, Circuit Judges, and BURNS, District Judge.*

TANG, Circuit Judge.

## OVERVIEW

Commercial Union Insurance Company ("CUIC") appeals from the Bankruptcy Appellate Panel's ("BAP") ruling that the retrospective insurance premium contract between CUIC and Texscan Corporation ("Texscan") was not an executory contract under 11 U.S.C. § 365. We affirm.

## FACTUAL AND PROCEDURAL HISTORY

CUIC and Texscan entered into a contract called a Large Risk–Loss Dividend Plan ("Plan"). The term of the contract was from January 1, 1983 until January 1, 1986. The Plan provided business coverage to Texscan through various workmen's compensation, comprehensive liability and automobile insurance contracts.

The Plan is modeled after a retrospective insurance premium contract. Under the contract, an annual premium is estimated and paid in installments. After the contract begins, annual adjustments are made whereby actual losses are computed and analyzed to determine the actual premium for that adjustment period. Based on whether the estimated premium is too high or too low, an overpaid premium is refunded to the insured, while an underpaid premium is paid to the insurer.

In June 1986, after expiration of the contract, the first full adjustment occurred, covering the previous 12 months. It resulted in a premium return to Texscan of $42,054.00.

---

* Honorable James M. Burns, United States District Judge for the District of Oregon, sitting by designation.

Meanwhile, on November 22, 1985, Texscan filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. CUIC continued to fulfill its obligations under the Plan by servicing the claims which arose until contract termination on January 1, 1986. The adjustment process also continued, and in June 1987, the second full adjustment was made. It resulted in a $80,212 premium deficit. It is this premium deficit which CUIC seeks to recover either as an executory contract binding upon the reorganized debtor or as a priority administrative expense through its proof of claim.

CUIC first appeared in this bankruptcy case on October 28, 1987 by filing an "Amended Administrative Expense Proof of Claim" ("Proof of Claim"). On November 16, 1987, CUIC filed an "Application for Payment of Administrative Expenses Incurred by Commercial Union Insurance Companies" ("Application"). These pleadings were filed two years after Texscan's bankruptcy petition, seventeen months after the court-ordered bar date for the filing of claims, and less than one month before the scheduled confirmation hearing of the "Second Amended Joint Plan of Reorganization."

On November 23, 1987, one day prior to the confirmation hearing on the Joint Plan, the bankruptcy court held a status hearing on CUIC's Proof of Claim and Application. At that time, the parties agreed to the court scheduling a hearing on CUIC's Proof of Claim and Application for December 31, 1987.

On November 24, 1987, the bankruptcy court entered its Order confirming the Joint Plan. This Order contained the standard provision regarding executory contracts, which provided that Texscan assumed any executory contract which was not previously rejected and was not, as of the effective date of the Joint Plan, the subject of a pending motion to assume or reject. Prior to CUIC's Claim and Application hearing, the parties agreed, with court approval, to address the legal issues upon which CUIC's Claim and Application were based. One of the issues to be addressed

was whether the contract between Texscan and CUIC was an assumable executory contract. The matter was scheduled for disposition on February 23, 1988.

At the February hearing, the bankruptcy court determined, among other things, that: (1) even though the insurance coverage under the Plan expired on January 1, 1986, the Plan remained executory; (2) the Plan had not been specifically assumed or rejected by Texscan; and (3) the Plan remained in some manner in force until a formal assumption or rejection was approved by the bankruptcy court. On March 25, 1988, Texscan filed a motion to reject the Plan to which CUIC responded. In September 1988, the bankruptcy court denied Texscan's Motion to Reject as untimely.

Texscan appealed to the BAP, which reversed the decision of the bankruptcy court. *Texscan Corp. v. Commercial Union Ins. Co. (In re Texscan)*, 107 B.R. 227, 230 (9th Cir. BAP 1989). CUIC now appeals the BAP's decision.

## STANDARD OF REVIEW

■ This court independently reviews the bankruptcy court's decision, because this court is in as good a position as the Bankruptcy Appellate Panel to review the bankruptcy court's legal conclusions. *United States v. Battley (In Re Kimura)*, 969 F.2d 806, 809 (9th Cir.1992). We review the bankruptcy court's findings of fact under the clearly erroneous standard. *Id.*

## DISCUSSION

■ In this case we must decide whether the retrospective insurance premium contract was an executory contract within the meaning of 11 U.S.C. § 365 at the time Texscan filed for bankruptcy. Under section 365(a) of the Bankruptcy Code ("Code"), a debtor may assume the obligations of an executory contract subject to the bankruptcy court's approval. 11 U.S.C. § 365(a). To determine whether a contract is executory for the purposes of the Code, we employ the following definition:

[An executory contract is] one on which performance is due to some extent on both sides.... [I]n executory contracts the obligations of both parties are so far unperformed that the failure of either party to complete performance would constitute a material breach and thus excuse the performance of the other.

*Marcus & Millichap Inc. v. Munple, Ltd (In re Munple)*, 868 F.2d 1129, 1130 (9th Cir.1989); *accord Griffel v. Murphy (In re Wegner)*, 839 F.2d 533, 536 (9th Cir.1988); *Pacific Express Inc. v. Teknekron Infoswitch Corp. (In re Pacific Express)*, 780 F.2d 1482, 1487 (9th Cir.1986) (employing the definition of an executory contract formulated by Professor Countryman in *Executory Contracts in Bankruptcy: Part I*, 57 Minn.L.Rev. 439, 460 (1973)); *Fenix Cattle Co. v. Silver (In re Select–A–Seat)*, 625 F.2d 290, 292 (9th Cir.1980).

■ We must first evaluate the obligations of both parties and determine whether they are material obligations. *In re Wegner*, 839 F.2d at 536. Next we determine whether, on the date the petition was filed, *see Collingwood Grain, Inc. v. Coast Trading Co. (In re Coast Trading Co.)*, 744 F.2d 686, 692 (9th Cir.1984), either party's failure to perform its remaining obligations would give rise to a material breach and excuse performance. *In re Wegner*, 839 F.2d at 536. If either party has "substantially performed" its side of the bargain, such that the party's failure to perform further would not excuse performance by the other party, then the contract is not executory. *In re Munple*, 868 F.2d at 1130 (citation omitted). The materiality of a remaining obligation and whether the failure to perform a remaining obligation is a material breach of the contract is an issue of state law. *In re Wegner*, 839 F.2d at 536.

CUIC argues that the Plan was an executory contract on the date Texscan filed its bankruptcy petition because if CUIC were to cease servicing post-petition claims, then it would be liable to Texscan for a material breach of contract. Similarly, the argument continues, were Texscan to cease making premium payments, this would constitute a material default.

This case is not about the non-payment of estimated premiums; CUIC does not argue that Texscan failed to pay the estimated premiums. Instead, we must determine whether the parties' remaining obligations under the Plan, i.e., Texscan's duty to pay any underpaid premiums and CUIC's duty to provide the final five weeks of coverage following bankruptcy, process claims and refund any overpayment of premiums, are so far unperformed that the failure of either party to complete performance would constitute a material breach and excuse performance, such that the contract was executory at the time of bankruptcy.

■ We obtain guidance on the proper treatment of this issue from *In re Placid Oil Co.*, 72 B.R. 135 (Bankr.N.D.Tex.1987). There the bankruptcy court held that a retrospective insurance premium arrangement was not an executory contract. *Id.* at 138. Factually, in *Placid Oil*, the filing of the bankruptcy petition took place subsequent to expiration of coverage and thus, the only remaining obligation for the debtor was its contingent obligation to pay any additional premiums. *Id.* at 138. The insurance coverage which was the object of the contract had been completely obtained by the debtor. Applying a similar legal standard, the court held that the debtor's contingent obligation to pay money was insufficient to establish a reciprocal obligation. *Id.* On the other side of the ledger, the insurer had fully completed its performance; its obligation to provide coverage was expired. It was undisputed that all claims for which the insurer was responsible, arose from events occurring prior to the bankruptcy filing. *Id.*

In this case, Texscan not only has the contingent obligation to pay any underpayment of premiums, but also has the obligation to pay for the final five weeks of coverage. On the other side, CUIC still has an obligation to adjust claims filed within the remaining five weeks of coverage after the petition was filed. Accordingly, unlike *Placid Oil*, there exists on the date of the filing of the bankruptcy petition

reciprocal obligations upon both parties. *See In re Wegner*, 839 F.2d at 536; *see also Employees Retirement System of Hawaii v. Osborne (In re THC Financial Corp.)*, 686 F.2d 799, 804 (9th Cir.1982) (concluding that there was not reciprocal obligations owed by both parties, thus rendering the agreement not executory).

██ Next, we must determine whether the obligations are so far unperformed that the failure of either party to complete performance would constitute a material breach excusing performance of the other. On this point, we agree with the BAP that the Plan was not executory because, pursuant to Arizona law, CUIC was required to continue processing claims despite Texscan's bankruptcy petition. *In re Texscan*, 107 B.R. at 230. Arizona law requires that:

> Every policy of insurance covering the liability of the employer for workers' compensation ... shall cover the entire liability of the employer to his employees covered by the policy or contract, and be deemed to contain the following provisions:
>
> * * * * * *
>
> 4. That the insolvency or bankruptcy of the employer and his discharge therein shall not relieve the insurance carrier from payment of compensation for injuries or death sustained by an employee during the life of the policy or contract.

Ariz.Rev.Stat.Ann. § 23–963 (1991). The BAP concluded that "CUIC had an affirmative duty to Texscan and its employees to continue to provide coverage for the five weeks after Texscan filed its Chapter 11 petition." *In re Texscan*, 107 B.R. at 230.

In order for the contract to be executory, the failure of Texscan to perform must "constitute a material breach and excuse the performance of [CUIC]." *See In re Munple*, 868 F.2d at 1130. Even if we assume that Texscan's failure to pay premi-

ums would otherwise be a material breach, this fact does not relieve CUIC from performing its obligations. The Arizona statute in the present case precludes CUIC from stopping performance, despite Texscan's inability to perform its obligation. Because CUIC would not be excused from performing due to Texscan's default, the contract cannot be considered executory.

CUIC, recognizing this statutory obstacle, argues that the statute is an "exogenous factor" which should not affect the analysis of whether an arrangement constitutes an executory contract under federal law.

This argument is meritless. Our application of the Arizona statute is consistent with our decision in *Wegner*, in which we applied a Montana statute to determine whether a bill of sale was a material obligation. *In re Wegner*, 839 F.2d at·536. Arizona law rejects the distinction between statutory and case law and states that all statutes relating to insurance contracts become part of the contract. *See Schultz v. Farmers Ins. Group*, 167 Ariz. 148, 805 P.2d 381, 382 (1991); *Brown v. State Farm Mut. Auto. Ins. Co.*, 163 Ariz. 323, 788 P.2d 56, 60 (1989); *State Farm Mut. Auto. Ins. Co. v. Wilson*, 162 Ariz. 251, 782 P.2d 727, 729, 736 (1989). The Arizona statute will not excuse performance by CUIC, regardless of whether Texscan pays or does not pay the required premiums. Accordingly, we affirm the BAP's conclusion that the contract between Texscan and CUIC was not executory.[1]

### CONCLUSION

On the basis of the foregoing, we affirm the decision of the Bankruptcy Appellate Panel that the contract between Texscan and CUIC was not executory.

---

**1.** Because we conclude that the contract at issue is not executory, we need not decide the timeliness of Texscan's motion to reject the contract or whether the contract rode through the reorganization and is binding upon Texscan. Neither do we decide the alternative basis stated by

the Bankruptcy Appellate Panel for reaching its decision, namely that because the plan period expired five weeks after the bankruptcy case commenced there was nothing remaining either to assume or reject under 11 U.S.C. § 365(a).