985 F.2d 573
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
In re PRESTIGE POINT, a Joint Venture, Debtor.
BEAR VALLEY MUTUAL WATER COMPANY, Appellant,
v.
PRESTIGE POINT, Appellee.
 No. 91-55837.
 United States Court of Appeals, Ninth Circuit.
 Submitted Feb. 2, 1993.*
Decided Feb. 4, 1993.
 
 Appeal from the Ninth Circuit Bankruptcy Appellate Panel, BAP No. CC-90-1295-VOJ (Bktcy. No. SB-86-07275-LR); Volinn, Ollason, and Jones, Judges, Presiding.
 Bkrtcy.App. 9, 130 B.R. 362.
 REVERSED.
 Before PREGERSON, LEAVY and TROTT, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 The owner of property leased to a debtor in bankruptcy appeals from the reversal of a declaratory judgment in its favor, holding that the debtor had no leasehold interest in the property. For the reasons set forth below, we reverse.
 
 FACTS AND PRIOR PROCEEDINGS
 
 3
 Bear Valley Mutual Water Company ("Bear Valley") filed an adversary complaint under 28 U.S.C. § 2201 against Chapter 11 debtor Prestige Point ("Prestige"), seeking a declaration that Prestige had no leasehold interest in a 10-acre parcel of lakefront real estate ("Property") owned by Bear Valley. The bankruptcy court ruled in favor of Bear Valley, holding in the alternative that (1) the court was not persuaded that the evidence proved Prestige attempted to renew the so-called Masonic Lease ("Lease") on the Property before its April 30, 1986 expiration; (2) even if the evidence showed that Prestige had attempted to renew the Lease, the method employed did not comply with the Lease terms and therefore failed as a matter of California law; and (3) even if Prestige did succeed in timely and properly renewing the Lease, it failed to assume the Lease as an asset of the bankruptcy estate for purposes of 11 U.S.C. § 365(d)(4).
 
 
 4
 Prestige challenged each of these determinations on its appeal to the Bankruptcy Appellate Panel ("BAP"). The BAP reversed, holding that the lower court had clearly erred as to its factual findings and had misinterpreted both California and bankruptcy law. Bear Valley now appeals, arguing that the BAP misapplied the clearly erroneous standard of review, misconstrued California law, and erred in concluding that section 365(d)(4) did not require Prestige to assume the Lease within 60 days of filing its petition in bankruptcy. We agree with Bear Valley's first contention and reverse the BAP on that ground.
 
 STANDARD OF REVIEW
 
 5
 Because we are in as good a position as the BAP to review not only the bankruptcy court's factual determinations but its legal conclusions as well, we review the former for clear error and the latter de novo. Commercial Union Ins. Co. v. Texscan Corp. (In re Texscan Corp.), 976 F.2d 1269, 1271 (9th Cir.1992).
 
 DISCUSSION
 
 6
 Boiled to its essence, the BAP's reversal of the bankruptcy court's factual findings was based on the appellate court's conclusion that no evidence directly contradicted Prestige's version of the events, i.e., pursuant to the instructions of Norma Harper, Bear Valley's rental agent, James Hunter dictated a letter exercising the option to renew the Lease, his wife wrote the letter as dictated and gave it to their daughter who, with a friend, dropped the letter off at Harper's office. From this the BAP concluded that the bankruptcy court effectively ignored the evidence supporting Prestige's story and simply decided to credit Bear Valley's version instead. We disagree.
 
 
 7
 Harper testified that she had not instructed the Hunters to write a letter purporting to renew the Lease, that she had not in fact received any such letter, and that no correspondence from the Hunters was found on her desk or in her office. Ms. Walsh, a long-time secretary at Bear Valley's main (and only other) office, testified that no such letter was found anywhere in the main office, either. The bankruptcy court also noted, inter alia, that Hunter did not explain why this particular venture was so urgent that it required a degree of his attention not apparently shown towards any of his other ventures; that Prestige failed to call Dave Pontell, allegedly a witness to the events described above, to corroborate Hunter's daughter's story;[1] that the Hunters offered no explanation why one of Prestige's coventures--or any of the officers of Hunter's corporation, for that matter--could not have exercised the option; and that no satisfactory explanation was offered as to why, for such an important transaction, the renewal letter was given to a teenager who drove 50 miles to place the apparently unmarked envelope containing the letter on an unoccupied desk in the office of a rental agent when Hunter could simply have dropped it in the mail addressed to Bear Valley's main office in Redlands, California, as expressly set out in the terms of the Lease.[2]
 
 
 8
 We readily concede that the BAP's interpretation of the evidence is every bit as persuasive as the bankruptcy court's. However, as we noted nearly four decades ago, cases will not be retried on appeal, because findings of fact by the trial court are presumptively correct. See, e.g., Glens Falls Indem. Co. v. United States, 229 F.2d 370, 373 (9th Cir.1955). Thus, an appellate court may not "supplant the [trial] court's judgment with that of [its] own ... [but must limit its] role ... to that of determining whether [the] appellant has rebutted this presumption of correctness by demonstrating that contrary findings are warranted when the evidence is taken as a whole and considered in a light most favorable to the appellee[ ]." Smith v. James Irvine Foundation, 402 F.2d 772, 774 (9th Cir.1968) (citations omitted), cert. denied, 394 U.S. 1000 (1969).
 
 
 9
 In Anderson v. Bessemer City, 470 U.S. 564 (1985), the Supreme Court stated that, "[W]hen a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error." 470 U.S. at 575. In light of the above authorities, we hold that the BAP's reversal of the bankruptcy court's factual findings for clear error effectively amounted to a reweighing of the evidence, based on an appellate-level discounting of the trial court's credibility findings as to each of the witnesses. This was improper. See id.
 
 
 10
 Accordingly, the decision of the BAP must be set aside. In light of our ruling on this point, we need not reach the merits of the two remaining issues presented by this appeal.
 
 
 11
 REVERSED.
 
 
 
 *
 This case is appropriate for submission on the briefs and without oral argument per Fed.R.App.P. 34(a) and 9th Cir.R. 34-4
 
 
 **
 This disposition is not suitable for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 As the BAP correctly noted, that fact cuts both ways, since Bear Valley presumably could have called Pontell to testify in order to refute the daughter's statement that she had dropped the letter off on Harper's desk in full view of Pontell
 
 
 [2]
 The fact that the Lease expressly provided for this means of notification is not meant to imply a conclusion on our part that Prestige had to send its renewal notice to Bear Valley in that fashion