USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 92-2463 IN RE RALAR DISTRIBUTORS, INC., ET AL., Debtors, __________ RALAR DISTRIBUTORS, INC., HALMAR DISTRIBUTORS, INC., Plaintiffs, Appellants, v. RUBBERMAID, INCORPORATED, Defendant, Appellee. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Frank H. Freedman, U.S. District Judge] ___________________ ____________________ Before Cyr and Boudin, Circuit Judges, ______________ and Burns,* Senior District Judge. _____________________ ____________________ Paul R. Salvage with whom Michael J. Coyne, Susan L. Burns and _______________ _________________ _______________ Bacon & Wilson, P.C. were on brief for appellants. ____________________ Dustin F. Hecker with whom Cornelius J. Chapman, V. Denise __________________ ______________________ __________ Saunders and McDermott, Will & Emery were on brief for appellee. ________ _______________________ ____________________ September 14, 1993 ____________________ ___________________ *Of the district of Oregon, sitting by designation. CYR, Circuit Judge. Chapter 11 debtors Ralar Distri- CYR, Circuit Judge. _____________ butors, Inc. and Halmar Distributors, Inc. (hereinafter: "debtor" or "R-H") appeal a district court order affirming a bankruptcy court's award of summary judgment to Rubbermaid, Inc. ("Rubber- maid") in R-H's adversary proceeding to recover a $453,000 preferential transfer. We affirm. I I BACKGROUND BACKGROUND __________ R-H, a wholesale distributor of household products, sold Rubbermaid and non-Rubbermaid merchandise to several retail store chains, including Caldor. Between 1987 and 1989, Rubbermaid and Caldor entered into a series of annual contracts, the latest executed in March 1989, which the parties refer to as an "advertising support program" ("ASP"). Rubbermaid authorized Caldor to incur expense for promotional ads of Rubbermaid products subject to reimbursement by Rubbermaid. Rather than reimburse Caldor directly for incurring these ASP expenses, however, Rubbermaid arranged with R-H, which was never a signatory to the ASP agreement, to serve as a go-between. Caldor would incur the ASP expenses, then deduct them from the next invoice it received from R-H. R-H routinely treated Caldor's ASP expenses as credits against Caldor's account with R-H ("ASP credit"). To offset these ASP credits, R-H in turn would reduce its next payment for Rubbermaid merchandise by the amount of its most recent ASP credit to Caldor. The net effect of the ASP 2 transaction on R-H's books was a "wash." On October 16, 1989, R-H commenced its chapter 11 reorganization proceeding. In its adversary proceeding complaint against Rubbermaid, R-H alleged that Rubbermaid received a voidable preferential transfer "on or about" July 24, 1989, when it authorized Caldor to offset ASP expenses totalling $453,000 as ASP credits on Caldor's account with R-H. The bankruptcy court entered summary judgment for Rubbermaid on the ground that the ASP credits merely constituted a "recoupment of mutual rights under one transaction." See infra notes 1 and 10. The district ___ _____ court affirmed. II II DISCUSSION DISCUSSION __________ Bankruptcy Code 547(b) sets out the essential elements of a voidable preference: (b) Except as provided in subsection (c) of this section [setting out defenses to avoid- ance], the trustee may avoid any transfer of an interest of the debtor in property ________ __ ___ ______ __ ________ (1) to or for the benefit of a creditor [viz., Rubbermaid]; ____ (2) for or on account of an antecedent debt owed by the debtor before such transfer was made; (3) made while the debtor was insolvent; (4) made (A) on or within 90 days before the date of the filing of the petition . . . ; and (5) that enables such creditor to receive more than such creditor would receive if (A) the case were a case under chapter 7 of this title [11 U.S.C. 701- 3 766]; (B) the transfer had not been made; and (C) such creditor received payment of such debt to the extent provided by the provisions of this title [11 U.C.S. 101-1330]. 11 U.S.C. 547(b) (emphasis added). A "transfer" of the debtor's "property," within the preference period, that enables a creditor to realize more than it would have received on its claim in a chapter 7 liquidation of the property of the debtor estate, see Bankruptcy Code 726, 11 U.S.C. 726, violates the theme of ___ equality of distribution among all creditors of like class. H.R. Rep. No. 595, 95th Cong., 2d Sess. 177-78, reprinted in 1978 _________ __ U.S.C.C.A.N. 5787, 5963, 6138 [hereinafter: H.R. Rep. No. 595]. Section 547(b) is designed to deter creditors from "dismember[ing] the debtor during [its] slide into bankruptcy." Id. at 177. ___ R-H contended that the net effect of the challenged ASP credits was to permit Rubbermaid to receive the entire "benefit" of the $453,000 ASP credit (i.e., the account receivable Caldor ____ owed R-H) which otherwise would have been apportioned among all of R-H's unsecured creditors, not merely Rubbermaid, in the event of a chapter 7 liquidation. The bankruptcy court disagreed, on the ground that the ASP credits effected no "transfer of an interest of the debtor in property."1 ____________________ 1The bankruptcy court explained its rationale as follows: There are two difficulties with [the Debtors'] argument. First, there never was a $453,000 receivable due to the Debtors from Caldor. The entire Caldor receivable was, with the Debtors' consent, at all times 4 Appellant R-H characterizes the ASP transactions quite differently: "On or about" July 24, 1989, Caldor owed R-H more than $453,000 for merchandise previously purchased from R-H. ___________ Thus, R-H held an account receivable an enforceable contract claim in the amount of $453,000 against Caldor which assumedly became property of the hypothetical R-H chapter 7 estate, see ___ Bankruptcy Code 541, 11 U.S.C. 541, hence available for pro ___ rata distribution among all R-H unsecured creditors, not merely ____ Rubbermaid. Instead, however, R-H in effect "released" Caldor from its obligation to pay R-H the full $453,000 account receiv- able, in order to effect reimbursement of the ASP expenses Caldor was entitled to receive from Rubbermaid under their separate ASP contract, thereby conferring an indirect "benefit" upon Rubber- ________ ____________________ subject to advertising credits which turned out to be $453,000. Second, there never was a $453,000 debt owed by the Debtors to Rubbermaid. The entire indebtedness owed Rubbermaid was at all times subject to the same credit arrangement. To put it another way, the agreement made among the Debtors, Caldor and Rubbermaid prevented any calculation of indebtedness owed by Caldor to the Debtors, or owed by the Debtors to Rubbermaid, without taking into account the advertising costs incurred by Caldor with respect to Rubbermaid products. Because the parties expressly agreed to the assertion of the advertising credits in their respective sales transactions, application of the credits constitutes recoupment of mutual rights under one transaction. Without that agreement, the advertising and sales would consist of separate transactions and there would not even be the right of setoff vis-a-vis Caldor and the Debtors or vis-a-vis the Debtors and Rubbermaid. See, generally, on recoupment and setoff, In re B & L Oil, 782 F.2d 155 ________________ (10th Cir. 1986) . . . . Ralar Distribs. v. Rubbermaid, Inc. (In re Ralar Distribs.), No. _______________ ________________ _____________________ 90-4222, slip op. at 3-4 (Bankr. D. Mass. Sept. 4, 1991). 5 maid. See Bankruptcy Code 101(54), 11 U.S.C. 101(54) ___ (broadly defining "transfer" as including both "direct" and "indirect" modes of disposing of property); see also Kellogg v. ___ ____ _______ Blue Quail Energy, Inc. (In re Compton Corp.), 831 F.2d 586, 591 ________________________ ___________________ (5th Cir. 1987) (mere "circuity of arrangement" cannot redeem a transaction which has the effect of a preference) (citing ______ National Bank of Newport v. National Herkimer Cty. Bank, 225 U.S. ________________________ ___________________________ 178, 184 (1912)). Rubbermaid counters that such ASP arrangements are too customary in wholesale-retail trade to be considered preferen- tial, and that this voluntary ASP arrangement constituted a long- established "course of dealing" among the parties. If a "trans- fer" occurred at all, says Rubbermaid, R-H received the benefit of the transfer because Rubbermaid accepted $453,000 less from R-H for household merchandise previously purchased from Rubbermaid, and if anyone received a voidable "transfer" from R- H, it was Caldor. Furthermore, these ASP credits ultimately ______ produced a "wash" on R-H's books, documenting the fact that there was no net diminution in either R-H's property or the property of its hypothetical chapter 7 estate. Finally, recovery of these transfers from Rubbermaid would result in an unjust enrichment to R-H, which realized the benefits from the use of these ASP credits in reducing its outstanding debt to Rubbermaid, but would now recoverthe same$453,000 forthe benefitof itschapter 11estate. There is surface appeal to the arguments of both 6 parties, though both are wide of their mark.2 If borne out by the evidence, the contentions advanced by R-H arguably would comport with the policy of equality of distribution, and R-H correctly asserts that it is the effect of the alleged transfer, ______ not the subjective intent of the parties, which primarily governs ___ the section 547(b) analysis. See 4 Lawrence P. King, Collier on ___ ___________ Bankruptcy 547.01, at 547-13 (and cases cited therein) __________ [hereinafter: Collier]; but cf. infra note 5. We are persuaded, _______ ___ ___ _____ nevertheless, by Rubbermaid's contention that R-H failed to carry its burden of proof in opposition to Rubbermaid's motion for summary judgment. In order to prevail, R-H ultimately must establish, by a preponderance of the evidence, each essential element of a ____________________ 2Several of Rubbermaid's arguments are beside the point. First, although Rubbermaid did not receive a direct "transfer" from R-H, a "transfer" to Caldor "for the benefit of" Rubbermaid would be recoverable from either Rubbermaid or Caldor. See Bank- ______ __ ___ ruptcy Code 550, 11 U.S.C. 550(a) (trustee may recover from "the initial transferee" or from "the entity for whose benefit the transfer was made"); Travelers Ins. Co. v. Cambridge Meridian __________________ __________________ Group, Inc. (In re Erin Food Servs., Inc.), 980 F.2d 792, 797, ___________ _____________________________ 797 n.8 (1st Cir. 1992). Second, Rubbermaid places great stock in the fact that these ASP transactions produced a "wash" on R-H's books, suggesting that the ASP credits resulted in no diminution of the hypotheti- cal chapter 7 estate. Were this the standard, however, few transfers would ever contravene 547(b). Instead, the 547(b) focus is on the ultimate effect of the transfer. By their very nature, most preferential transfers result in a "wash" on the debtor's books, since the preferred transferee receives payment on account of an antecedent debt and its allowable "claim" against the chapter 7 estate is reduced accordingly. Finally, arguably no "unjust" enrichment would result were R-H to recover from Rubbermaid. If Rubbermaid were required to disgorge, it could file a proof of claim for the amount of the avoided transfer, id. 502(h), 502(d), which would be entitled ___ to a pro rata distribution from the R-H debtor estate. ___ ____ 7 voidable preference under section 547(b). See Bankruptcy Code ___ 547(g), 1107(a), 11 U.S.C. 547(g), 1107(a); Travelers Ins. ______________ Co. v. Cambridge Meridian Group, Inc. (In re Erin Food Servs., ___ _______________________________ ________________________ Inc.), 980 F.2d 792, 799 (1st Cir. 1992). Once the movant ____ presents sufficient competent evidence to entitle it to summary judgment as a matter of law, the nonmovant cannot rest merely on the averments and denials in its pleadings, but must set forth specific facts demonstrating a genuine issue for trial. See Fed. ___ R. Bankr. P. 7056; Fed. R. Civ. P. 56(c), (e); Germain v. RFE _______ ___ Inv. Partners IV (In re Wescorp, Inc.), 148 B.R. 161, 162-63 _________________ ____________________ (Bankr. D. Conn. 1992); see also Marshack v. Sauer (In re ___ ____ ________ _____ ______ Palmer), 140 B.R. 765, 768 (Bankr. C.D. Cal. 1992). As to any ______ essential factual element of its claim on which the nonmovant would bear the burden of proof at trial, its failure to come forward with sufficient evidence to generate a trialworthy issue warrants summary judgment for the moving party. See Christians ___ __________ v. Crystal Evang. Free Church (In re Young), 148 B.R. 886, 889 ___________________________ ____________ (Bankr. D. Minn. 1992) (citing Celotex Corp. v. Catrett, 477 U.S. _____________ _______ 317, 322 (1986)). At trial, R-H would bear the burden of proving, inter _____ alia, that the challenged ASP credits effected a "transfer of an ____ interest of the debtor in property." Bankruptcy Code 547(b), 11 U.S.C. 547(b). See also Bankruptcy Code 547(e), 11 U.S.C. ___ ____ 547(e) ("[A] [preferential] transfer is not made until the debtor has acquired rights in the property [transferred]."). A prepetition debtor acquires "rights" in property for section 8 547(b) purposes if, but for the challenged transfer, its interest __ ___ ___ would have been "property of the estate" under section 541 at the filing of a chapter 7 petition. See Begier v. Internal Revenue ___ ______ ________________ Serv., 496 U.S. 53, 58, 58 n.3 (1990). _____ Accordingly, at the summary judgment stage, R-H was required to come forward with competent evidence that, immediately prior to its "transfer" of these ASP credits, its hypothetical chapter 7 estate owned an account receivable from Caldor equal to the total unpaid price of the merchandise _____ _____ previously sold to Caldor, and not merely in the net amount due ___ ___ ___ ______ R-H after deducting Caldor's ASP credit from the total price of the merchandise. Unless the hypothetical R-H chapter 7 estate would have acquired the contract right to compel Caldor to pay the full $453,000, with no offsetting ASP credit, the property of the hypothetical R-H estate could not have been diminished. Id. ___ ("[I]f the debtor transfers property that would not have been available for distribution to his creditors in a bankruptcy proceeding, the policy behind the avoidance power is not implicated."). What constitutes "property," within the meaning of Bankruptcy Code 541, is a question of federal law, see Koch ___ ____ Ref. v. Farmers Union Cent. Exch., Inc., 831 F.2d 1339, 1343 (7th ____ _______________________________ Cir. 1987) (citing H.R. Rep. No. 595, at 367-68), cert. denied, _____ ______ 485 U.S. 906 (1988), and it is well established that a debtor's contractual right to recover an account receivable is property of the chapter 7 estate, see Crysen/Montenay Energy Co. v. Esselen ___ ___________________________ _______ 9 Assocs., Inc. (In re Crysen/Montenay Energy Co.), 902 F.2d 1098, _____________ _________________________________ 1101 (2d Cir. 1990) (citing In re Chauteguay Corp., 78 B.R. 713, _______________________ 725 (Bankr. S.D.N.Y. 1987)); Glenshaw Glass Co. v. Ontario Grape __________________ _____________ Growers Mktg. Bd. (In re Keystone Foods, Inc.), 145 B.R. 502, 508 _________________ __________________________ (Bankr. W.D. Pa. 1992). On the other hand, the nature and extent of the debtor's enforceable "interest" or "rights" in an account receivable are defined by state law in this case, by state _____ contract law. See, e.g., Griffel v. Murphy (In re Wegner), 839 ________ ___ ____ _______ ______ ____________ F.2d 533, 538-39 (9th Cir. 1988) (under Montana law, prior mutual rescission of executory contract divested debtor of "rights" in cattle); see also Glinka v. Bank of Vermont (In re Kelton Motors, ___ ____ ______ _______________ ____________________ Inc.), 153 B.R. 417, 419 (D. Vt. 1993) (because 547(b) is ____ silent, courts must "look to state law" for definition of "interest" in property); see generally Collier 547.03, at 547- ___ _________ _______ 22.1. Here, R-H alleged a "transfer." Rubbermaid, the movant at summary judgment, presented competent extracontractual evidence that the contract between R-H and Caldor gave rise to an account receivable only in the net amount of the unpaid price of ____ ___ ______ the merchandise less Caldor's ASP credits. Indeed, even on ____ appeal R-H readily concedes that it invariably honored Caldor's ASP credits from the inception of the ASP arrangement in 1987.3 The deposition testimony revealed that Caldor, like many other ____________________ 3As further confirmation of the parties' understanding, their prepetition settlement agreement of Caldor's debt to R-H in September 1989 reflects a deduction for all ASP credits then due Caldor. 10 trade retailers, routinely asserted this sort of "charge back" for manufacturers other than Rubbermaid. Under state law,4 R-H's contract rights against Caldor, if indefinitely expressed in their contract, would be informed by their prior course of dealing, course of performance, or usage of trade. See Mass. Gen. L. ch. 106, 2-202 (1990) ___ (providing that parol evidence of prior course of dealing or usage of trade is admissible to explain or supplement contract terms); id. 1-205(1) (defining "course of dealing" as "a ___ sequence of previous conduct between the parties to a particular transaction which is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct"); id. 1-205(3); id. 2-208(1) ("Where the ___ ___ contract for sale involves repeated occasions for performance by either party with knowledge of the nature of the performance and opportunity for objection to it by the other, any course of performance accepted and acquiesced in without objection shall be relevant to determine the meaning of the agreement."); id. ___ 1-205(2) (defining "usage of trade" as any practice or method of dealing having such regularity of observance in a place, vocation or trade as to justify an expectation that it will be ____________________ 4We assume for present purposes that Massachusetts law would apply to the contract for the sale of goods between R-H, a Mas- sachusetts corporation, and Caldor. The Massachusetts Uniform Commercial Code, on "course of performance and dealing" and "usage of trade" evidence, substantially conforms with that in other states. 11 observed with respect to the transaction in question").5 Bypassing these procedural concerns, R-H urges on appeal that "[w]hether an account receivable from Caldor ever existed on the Debtors [sic] books is a [question] of fact which should be determined by the Bankruptcy Court on remand." However, once Rubbermaid came forward with its undisputed evidence of prior course of dealing, performance, and usage of trade, R-H was left with the laboring oar. As the nonmovant at summary judgment, R-H had the burden to establish that its agree- ment with Caldor contained an express contract term which (i) ____ ______ _______ would have precluded resort to such extracontractual evidence in interpreting the contractual rights of the parties, or (ii) would at least have given rise to a trialworthy factual issue bearing on the proper interpretation of their contract. See Mass. Gen. ___ L. ch. 106, 1-205(4) (1990) (express contract terms "trump" inconsistent "course of dealing" evidence); see also Lancaster ___ ____ _________ ____________________ 5In many respects, this is precisely the type of evidence which would be needed to establish Rubbermaid's 547(c)(2) defense to preference avoidance for payments made in the _______ "ordinary course of [the debtor's] business." See Collier ___ _______ 547.01, at 547-13 n.20 (noting that, though state of mind generally is immaterial to overall 547 analysis, intent "may be _________ a dispositive factor in determining certain elements of a preference . . . ."). But because this "transfer" involves R-H's alleged "release" of a preexisting obligation by Caldor, and R-H has the threshold burden to establish all essential 547(b) ___ elements before the burden shifts to Rubbermaid to establish a 547(c) defense to avoidance, the burden remained with R-H to _______ establish a contract right to recover the full price of the ____ merchandise with no offsets for Caldor's ASP credits. 12 GlassCorp. v. PhilipsECG, Inc., 835F.2d 652, 659(6th Cir. 1987).6 __________ ________________ The record does not disclose the relevant terms of the Caldor - R-H agreement nor is there documentation from which its terms might reasonably be inferred.7 Moreover, there is no evi- dence that Rubbermaid accelerated its recourse to the ASP credit arrangement in anticipation of R-H's chapter 11 petition, as by inducing Caldor to increase the amount or frequency of its ASP credits over previous levels.8 Consequently, given its failure to confront Rubbermaid's evidence of prior course of dealing, performance, and usage of trade, R-H demonstrated no trialworthy dispute that it had any cognizable "interest" in the $453,000 ASP credit which would have become property of the estate in the ____________________ 6Similarly, R-H did not generate a trialworthy issue as to whether the ASP credits could have replaced the "released" Caldor accounts receivable as R-H "assets," since the hypothetical R-H chapter 7 estate could never have required Rubbermaid to honor the ASP credits by paying the R-H estate $453,000 in cash. Under the contract between Rubbermaid and R-H, as informed by prior course of dealing, any ASP credits held by R-H could be used only ____ to reduce R-H's accounts payable to Rubbermaid. 7R-H's Exhibit H is merely a redacted transcription of certain relevant book entries, prepared solely for litigation purposes, hence not probative of the terms of the agreement between R-H and Caldor. Similarly, although a former R-H officer testified that R-H could have refused to accept Caldor's ASP credits at any time, he identified no contractual basis for the supposed right of refusal, nor did he suggest that R-H had ever exercised such a right. 8Nowhere does R-H suggest or show that Caldor's ASP credits exceeded the authorized 1989 fixed percentage rate (13.75% of total 1989 merchandise sales to Caldor), or that the 1989 level differed significantly from the authorized fixed-percentage rates, or ASP credits claimed, in 1987 or 1988. 13 event of a chapter 7 liquidation.9 III III CONCLUSION CONCLUSION __________ We hold that R-H did not establish a trialworthy issue as to whether a section 547(b) "transfer" occurred, as was its burden under Fed. R. Bankr. P. 7056 and Fed. R. Civ. P. 56(c), (e). Thus, we need take no position on the voidability of duly established ASP credit transactions as preferential transfers under section 547(b).10 ____________________ 9R-H's Rule 7056 proffer was seriously deficient on more than one front. The 90-day preference period extended back to July 19, 1989. But the evidence shows that Caldor claimed $294,000 of the $453,000 in ASP credits by assessing "charge backs" against R-H on June 25, 1989. Since R-H's acceptance of ____ __ ____ these "charge backs" constituted the alleged "transfer," R-H arguably did not meet its burden of proving that these transfers of $294,000 in ASP credits fell within the applicable preference period under 547(b)(4)(A) (transfer "made . . . on or within 90 days before the date of the filing of the petition"). 10The bankruptcy court premised its decision on the equitable doctrine of recoupment, see supra note 1, citing In re ___ _____ _____ B & L Oil Co., 782 F.2d 155 (10th Cir. 1986). Where a chapter 7 _____________ estate and its creditor hold "counterclaims" arising out of a contractual "transaction" which bridges the date of the chapter 7 petition, it is often deemed inequitable to allow the estate to recover its postpetition claim in full from the creditor, while __ ____ the same creditor is allowed only a pro rata dividend on its ___ ____ prepetition claim against the estate. Recoupment allows the creditor to abate its payment to the chapter 7 estate by the amount of its prepetition claim. Since we rely on other grounds, we need not address the problematic application of the recoupment theory in this case. See Electronic Metal Prods., Inc. v. ___ _______________________________ Honeywell, Inc., 95 B.R. 768, 770 (D. Colo. 1989) (recoupment _______________ must be narrowly construed as a preference defense); compare _______ Raleigh v. Mid American Nat'l Bank & Trust Co. (In re Stoecker), _______ ____________________________________ ______________ 131 B.R. 979, 983 (Bankr. N.D. Ill. 1991) (recoupment not a viable defense on merits of preference avoidance action as it is not an enumerated defense in 547(c)(1)-(7)), with Visiting ____ ________ Nurse Ass'n of Tampa Bay, Inc. v. Sullivan (In re Visiting Nurse ______________________________ ________ ____________________ 14 Affirmed; cost to appellees. Affirmed; cost to appellees. ________ _________________ ____________________ Assoc. of Tampa Bay, Inc.), 121 B.R. 114, 121 n.4 (Bankr. M.D. __________________________ Fla. 1990) (recoupment "well recognized" defense to preference avoidance). 15