
**ORDERED PUBLISHED**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>SVENHARD'S SWEDISH BAKERY,<br>　　　　　　Debtor. | BAP No.  EC-23-1001-GLB<br><br>Bk. No. 19-15277 |
| SVENHARD'S SWEDISH BAKERY,<br>　　　　　　Appellant,<br>v.<br>UNITED STATES BAKERY; OFFICIAL<br>COMMITTEE OF UNSECURED<br>CREDITORS; CONFECTIONERY<br>UNION AND INDUSTRIAL PENSION<br>FUND,<br>　　　　　　Appellees. | **OPINION** |

Appeal from the United States Bankruptcy Court
for the Eastern District of California
Christopher M. Klein, Bankruptcy Judge, Presiding

APPEARANCES:

Derrick Talerico of Weintraub Zolkin Talerico & Selth, LLP argued for appellant; Paul S. Jasper of Perkins Coie LLP argued for appellee Official Committee of Unsecured Creditors; Joshua A. Segal of Bredhoff & Kaiser P.L.L.C. argued for appellee Confectionery Union and Industrial Pension Fund.

Before: GAN, LAFFERTY, and BRAND, Bankruptcy Judges.

GAN, Bankruptcy Judge:

## INTRODUCTION

Chapter 11[1] debtor Svenhard's Swedish Bakery ("Debtor") appeals the bankruptcy court's order denying its motion to assume and assign, pursuant to § 365, a purported executory contract. The contract in question is a settlement agreement between Debtor and the Confectionery Union and Industrial Pension Fund (the "Pension Fund") which provides for the release of approximately $46,000,000 of Debtor's liability after payment of reduced amounts on specified terms.

The bankruptcy court held that the settlement agreement is not an executory contract because the Pension Fund's only contractual obligation—to release its claim upon full payment under the agreement—is not due until after Debtor fully performs. Debtor has not demonstrated reversible error; we AFFIRM.

## FACTS[2]

### A. Prepetition events

Until 2019, Debtor operated a bakery producing Swedish pastries. In 2014, Debtor executed a series of transactions to sell its business to United States Bakery ("USB"), and it commenced a five-year lease-back of its

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure.

[2] We exercise our discretion to take judicial notice of documents electronically filed in the bankruptcy case and related proceedings. *See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood)*, 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

operations. In 2015, Debtor closed its bakery in Oakland, California and relocated its operations to Exeter, California. As a result of closing the Oakland facility and terminating its union workforce, Debtor effectively withdrew from the Pension Fund.

The Pension Fund notified Debtor that it had incurred a withdrawal liability of $50,150,043[3] ("Withdrawal Liability"), and later informed Debtor that it had failed to make pension contributions of $514,857.67 related to severance pay and accrued vacation ("Contribution Liability"). Debtor did not make a timely request for review of the assessment of Withdrawal Liability pursuant to 29 U.S.C. § 1399(b)(2), and consequently, the amount was due and owing as demanded by the Pension Fund.

Debtor informed the Pension Fund that it could not pay the Withdrawal Liability and offered to pay a reduced amount. Debtor provided the Pension Fund with financial information, and after protracted negotiations, the parties signed a settlement agreement (the "Settlement") in April 2019. Under the Settlement, Debtor agreed to pay the Pension Fund $3,000,000, through 240 monthly installments of $12,500, in satisfaction of the Withdrawal Liability. Debtor also agreed to pay the Contribution Liability with interest at 5.25% through monthly installments of $8,580.80.

---

[3] According to Debtor, the provision of ERISA governing payment of withdrawal liability provides that Debtor could be required only to pay $162,941 per month for 20 years, which totals $39,105,804.

The Settlement provides that upon Debtor's full payment of the agreed amounts, the Pension Fund will execute a release of its claim for Withdrawal Liability and a separate release of its claim for the Contribution Liability. The Settlement further provides that if Debtor fails to make any payment, the Pension Fund can declare a default and, if Debtor fails to cure the default, Debtor is liable for the full Withdrawal Liability of $39,105,840, plus allowed interest, and the full unamortized Contribution Liability, less actual payments made.

In November 2019, USB terminated the lease-back agreements and Debtor ceased operations. Debtor missed the December 2019 payment under the Settlement, and on December 13, 2019, the Pension Fund declared a default. Debtor filed its chapter 11 petition on December 19, 2019.

**B.    The bankruptcy and settlement with USB**

The Pension Fund filed a proof of claim based on the Settlement, and asserted it was owed $45,400,506.78 for the Withdrawal Liability and $566,994.14 for the Contribution Liability.

After Debtor filed the bankruptcy case, the Pension Fund sued USB in the United States District Court for the Eastern District of California ("District Court"), asserting claims for the Withdrawal Liability and the Contribution Liability under a theory of successor liability. Debtor also filed an adversary complaint against USB, alleging various claims including successor liability, breach of fiduciary duty, fraud, and violations

4

of California Business and Professions Code § 17200. USB successfully moved to withdraw the adversary proceeding to the District Court, and both cases were subsequently transferred to the United States District Court for the District of Oregon.

USB sought to dismiss Debtor's bankruptcy case. After the bankruptcy court denied the motion and the District Court dismissed its appeal, USB appealed to the Ninth Circuit. While the appeal was pending, USB, Debtor, and the Committee of Unsecured Creditors (the "Committee") agreed to participate in the Ninth Circuit's appellate mediation program.[4]

Debtor and USB reached a comprehensive agreement which provided for USB to pay Debtor $3,000,000 and cure the default on the Settlement, and for Debtor to assume and assign the Settlement to USB. USB also agreed to withdraw its proof of claim and dismiss its pending appeal, and Debtor agreed to dismiss its pending action against USB. The agreement was conditioned on bankruptcy court approval of the agreement and approval of Debtor's motion to assume and assign the Settlement as a valid and subsisting contract.

C.    **The motion to assume and assign and the court's ruling**

In November 2022, Debtor filed a motion to assume and assign the Settlement under § 365 and a motion to approve the agreement with USB

---

[4] Although the Pension Fund was a member of the Committee, at the request of Debtor and USB, it did not participate in the mediation.

under Rule 9019.[5] Debtor asserted that the Settlement was an executory contract because both parties had remaining material obligations: Debtor was required to make monthly payments, and the Pension Fund was required to execute releases of its claims. The Committee joined the motion, and the Pension Fund objected.

The Pension Fund argued that the Settlement could not be assumed and assigned because it was not an executory contract under Ninth Circuit law. The Pension Fund maintained its obligation to execute the releases was not due unless Debtor made all payments under the Settlement, and thus, its obligation was contingent as of the petition date. The Pension Fund further argued that it would be inappropriate for the court to determine whether the Settlement was a "valid and subsisting contract" as part of a summary proceeding under § 365.

After a hearing, the bankruptcy court held that the Settlement was not executory because it lacked the requisite mutuality of obligation given that the Pension Fund's obligations to execute the releases were conditioned on Debtor's full performance. The court additionally held that the Settlement was a financial accommodation to Debtor and thus, not assumable under § 365(c)(2). Finally, the court declined to determine whether the Settlement was a valid and subsisting contract, and cited

---

[5] The bankruptcy court denied the Rule 9019 motion and we dismissed the appeal from that order as interlocutory. This appeal involves only the bankruptcy court's order denying Debtor's motion to assume and assign the Settlement under § 365(a).

*Diatom, LLC v. Committee (In re Gentile Family Industries)*, BAP No. CC-13-1563-KiTaD, 2014 WL 4091001, at *5 (9th Cir. BAP Aug. 19, 2014), for the proposition that the "validity of a contract if disputed cannot be determined in the context of a motion to assume or reject."

The bankruptcy court entered a written decision and order denying Debtor's motion to assume and assign the Settlement, and Debtor timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A) and (O). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

Did the bankruptcy court err by denying Debtor's motion to assume and assign the Settlement under § 365(a)?

Did the bankruptcy court err by declining to decide whether the Settlement was a valid and subsisting contract?

## STANDARDS OF REVIEW

Whether a contract is "executory" for purposes of § 365 is a question of fact, which we review for clear error. *Carruth v. Eutsler (In re Eutsler)*, 585 B.R. 231, 234-35 (9th Cir. BAP 2017) (citing *Unsecured Creditors' Comm. v. Southmark Corp. (In re Robert L. Helms Constr. & Dev. Co.)*, 139 F.3d 702, 706 n.13 (9th Cir. 1998) (hereinafter "*In re Helms Constr.*") (en banc). Factual findings are clearly erroneous if they are illogical, implausible, or without

7

support in the record. *Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1196 (9th Cir. 2010).

We review de novo the bankruptcy court's decision to decline to decide whether a contract is "valid and subsisting" as part of its decision on a motion under § 365(a). *See Durkin v. Benedor Corp. (In re G.I. Indus.)*, 204 F.3d 1276, 1279 (9th Cir. 2000). Under de novo review, "we consider a matter anew, as if no decision had been made previously." *Francis v. Wallace (In re Francis)*, 505 B.R. 914, 917 (9th Cir. BAP 2014).

## DISCUSSION

### A.    Assumption of executory contracts under § 365

Pursuant to § 365, a debtor in possession may assume or reject any executory contract, subject to court approval, and assign the executory contract upon adequate assurance of future performance by the assignee.

The term "executory contract" is not defined in the Bankruptcy Code, but the Ninth Circuit has adopted the following definition, known as the "Countryman test," formulated by Professor Countryman: "[A] contract is executory if 'the obligations of both parties are so unperformed that the failure of either party to complete performance would constitute a material breach and thus excuse the performance of the other.'" *In re Helms Constr.*, 139 F.3d at 705 (quoting *Griffel v. Murphy (In re Wegner)*, 839 F.2d 533, 536 (9th Cir. 1988)); *see* Vern Countryman, *Executory Contracts in Bankruptcy: Part I*, 57 Minn. L. Rev. 439, 460 (1973).

To determine whether a contract is executory, we first determine whether both parties have remaining material obligations. *Com. Union Ins. Co. v. Texscan Corp. (In re Texscan Corp.)*, 976 F.2d 1269, 1272 (9th Cir. 1992). If either party has "substantially performed," the contract is not executory. *Marcus & Millichap Inc. v. Munple, Ltd. (In re Munple, Ltd.)*, 868 F.2d 1129, 1130 (9th Cir. 1989). We then determine, as of the petition date, whether failure to perform would give rise to a material breach and excuse performance by the other party. *In re Texcan Corp.*, 976 F.2d at 1272 (citing *Collingwood Grain, Inc. v. Coast Trading Co. (In re Coast Trading Co.)*, 744 F.2d 686, 692 (9th Cir. 1984) and *In re Wegner*, 839 F.2d at 536). "The materiality of a remaining obligation and whether the failure to perform a remaining obligation is a material breach of the contract is an issue of state law." *Id.* (citation omitted).

Under Maryland law, which governs the Settlement, "any breach of contract may give rise to a cause of action for damages, [but] only a material breach discharges the non-breaching party of its duty to perform." *Jay Dee/Mole Joint Venture v. Mayor and City Council of Baltimore*, 725 F.Supp.2d 513, 526 (D. Md. 2010). A breach is material "if it affects the purpose of the contract in an important or vital way." *In re Cho*, 581 B.R. 452, 462 (Bankr. D. Md. 2018) (cleaned up).

**B.** **The bankruptcy court did not err by determining the Settlement is not executory.**

Debtor does not demonstrate, nor do we discern, error in the bankruptcy court's ruling that the Settlement is not an executory contract. The Settlement plainly provides for the Pension Fund to release claims upon full payment by Debtor. Thus, the failure of the Pension Fund to execute the releases would not constitute a material breach sufficient to excuse Debtor's performance.

The express requirement for the Pension Fund to execute releases "[u]pon full payment" creates a performance condition under Maryland law. *See Chirichella v. Erwin*, 310 A.2d 555, 557 (Md. 1973) (stating that phrases such as "if," "provided that," "when," "after," "as soon as," or "subject to" are sufficient to create express conditions). "Generally, when a condition precedent is unsatisfied, the corresponding contractual duty of the party whose performance was conditioned on it does not arise." *B & P Enters. v. Overland Equip. Co.*, 758 A.2d 1026, 1038 (Md. Ct. Spec. App. 2000).

Thus, the Pension Fund could not breach the Settlement by refusing to execute the releases unless Debtor had fully performed by making all payments. *See NSC Contractors, Inc. v. Borders*, 564 A.2d 408, 413 (Md. 1989) ("It is fundamental that where a contractual duty is subject to a condition precedent . . . there is no duty of performance and there can be no breach by nonperformance until the condition precedent is either performed or

excused.") (quoting *Laurel Race Course v. Regal Constr. Co.*, 333 A.2d 319, 327 (Md. 1975)); Restatement (Second) of Contracts § 235, *cmt. b* ("Non-performance is not a breach unless performance is due. Performance may not be due because . . . a condition has not occurred."). Because the Pension Fund's contractual obligations are due only after Debtor fully performs by making all required payments, a breach by the Pension Fund could not logically excuse Debtor's performance of its duty to make payments.

Debtor suggests that payments under the Settlement would result in satisfaction of the Contribution Liability several years prior to satisfaction of the Withdrawal Liability, and therefore if the Pension Fund refused to execute the Contribution Liability release, such breach would excuse Debtor's remaining payment obligation. But this argument conflates the two separate exchanges involved in the Settlement. Debtor is required to make two sets of monthly payments: (1) $8,580.80 to satisfy the Contribution Liability with interest at 5.25%, in exchange for the Pension Fund's release of its claim; and (2) $12,500 for 240 months, in exchange for the Pension Fund's release of the Withdrawal Liability. The Pension Fund's failure to release the Contribution Liability would not excuse Debtor from making payments related to the Withdrawal Liability.

Additionally, we question whether the Pension Fund's obligation to execute the releases is "material." Debtor argues that the releases are essential to the Settlement and vitally affect its purpose. The purpose of the Settlement is to mutually resolve the claims. If the Pension Fund refused to

execute the releases after full payment by Debtor, the Settlement and proof of payment would operate as a complete defense to a collection action in the same manner as a signed release. Given the nature of the Settlement, the releases are likely ministerial and not sufficient to render the Settlement executory. *See Enter. Energy Corp. v. United States (In re Columbia Gas Sys. Inc.*, 50 F.3d 233, 243 (3d Cir. 1995) (describing "execution of the release to be found in the settlement of any case" as a ministerial act); *Mitchell v. Streets (In re Streets & Beard Farm P'ship)*, 882 F.2d 233, 235 (7th Cir. 1989) (holding unperformed delivery of legal title to be a formality rather than "the kind of significant legal obligation that would render the contract executory"); *In re GEC Indus., Inc.*, 107 B.R. 491, 492 (Bankr. D. Del. 1989) (holding seller's unperformed warranty obligations insufficient to make contract executory; buyer's administrative steps to submit claims for breach of warranty are merely procedural and do not make the contract executory).

Debtor suggests the bankruptcy court misconstrued *Helms*, which dealt only with an unexercised option, and argues that the bankruptcy court's ruling creates new precedent that bars debtors from assuming or rejecting all contracts where both parties do not have immediate and concurrent performance obligations. Debtor contends that virtually all settlement agreements which require payment in exchange for a release of liability should be deemed executory. We disagree.

12

The bankruptcy court found support for its decision in *Helms*, but its decision was grounded in long-standing precedent and application of the Countryman test. It is conceivable that some contracts with sequential performance may be executory, but not all settlement agreements will satisfy the Countryman test. The Countryman test requires bankruptcy courts to "test" the factual circumstances of each purported executory contract and evaluate whether both parties have sufficient remaining obligations such that failure to perform would constitute a material breach and excuse performance by the other.

The purpose of the test is to permit a debtor in possession to evaluate substantially underperformed contracts and use its business judgment to assume those with positive net value to the estate while rejecting those which result in a loss. Central to this purpose is the requirement that the estate have remaining performance obligations which might outweigh the expected benefit of the remaining performance to be received. In other words, an executory contract is one where both parties have something at risk.

Here, the Settlement requires nothing of the Pension Fund but the ministerial act of executing releases upon full payment. Failure to do so would not be a material breach, and because the releases are not required until after full payment by Debtor, it is not possible for the Pension Fund to materially breach the Settlement and excuse Debtor's performance.

The bankruptcy court did not err by determining that the Settlement is not an executory contract. Thus, we need not reach the court's alternative holding that the Settlement is unassumable as a contract for financial accommodations to Debtor.

**C.     The bankruptcy court properly declined to determine whether the Settlement was a valid and subsisting contract.**

Debtor argues that the court erred by refusing to rule that the Settlement is a valid and subsisting contract because no party disputed its validity. But Debtor fails to articulate why the court was required to determine the validity of the Settlement in the context of a summary § 365(a) proceeding. The bankruptcy court properly declined to enter an order regarding the validity of the Settlement, regardless of whether it was in dispute. *See In re G.I. Indus.*, 204 F.3d at 1282 ("A bankruptcy court's hearing on a [§ 365 motion] is a summary proceeding that involves only a cursory review of a trustee's decision . . . ."); *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1099 (2d Cir. 1993) ("At heart, a motion to assume should be considered a summary proceeding, intended to efficiently review the trustee's or debtor's decision to adhere to or reject a particular contract . . . ."). Moreover, Debtor does not explain why such an order is necessary if the validity of the Settlement is uncontested.

## CONCLUSION

Based on the foregoing, we AFFIRM the bankruptcy court's order denying Debtor's motion to assume and assign the Settlement.